**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John DOE, Defendant–Appellant.**

No. 97–50408.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1997.

Decided Sept. 9, 1997.

Before: BROWNING and SCHROEDER, Circuit Judges, and RESTANI,* United States Court of International Trade Judge.

RESTANI, Judge:

Defendant–appellant John Doe ("Doe") challenges the district court's decision not to dismiss the criminal contempt information filed against him. Specifically, Doe claims that the government's outrageous conduct in connection with charging him with criminal contempt violated his constitutional right to due process and equal protection and, alternatively, that the district court failed to exercise its supervisory powers by dismissing the information. We affirm.

## BACKGROUND

Doe, along with three others, conspired to commit several armed postal robberies. In 1993, Doe was arrested and charged with two counts of robbery of a postal service letter carrier in violation of 18 U.S.C. § 2114 and two counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). In exchange for Doe's plea and cooperation in prosecuting his co-conspirators, the government moved to dismiss one count of using a firearm during a crime of violence and recommended a three level reduction in his sentencing guideline offense level. Doe pled guilty to both postal robbery counts and to one count of using a firearm during a crime of violence, and agreed to testify against other individuals involved in the robberies pursuant to a plea and cooperation agreement with the government. Specifically, the agreement with Doe provided that, "You

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

agree that you will cooperate fully with the government in its continuing investigation of this case." Doe was convicted and sentenced to 120 months incarceration after receiving a six level departure in his offense level. Two of Doe's co-conspirators pled guilty and agreed to cooperate against a third alleged co-conspirator, James Roe. Roe was not charged at that time.

After Doe was sentenced, Roe was indicted for his participation in the armed postal robberies. The government filed a writ to have Doe brought cross country to testify in the case against Roe,[1] and notified Doe's attorney that Doe was needed as a witness in the prosecution of Roe. While Doe was en route, his attorney informed the government that she doubted that Doe would be willing to testify in view of the hardships that he had endured and continued to suffer as the result of his previous cooperation. Doe's attorney stated that Doe might consider testifying if a motion to reduce Doe's sentence pursuant to Fed.R.Crim.P. 35[2] was filed contemporaneously with his testimony. The government refused to file a Rule 35 motion, taking the position that Doe was obligated to testify under the plea agreement without any additional incentive. Subsequently, the government informed Doe's attorney that it was willing to consider filing such a motion, but would not do so before Doe actually testified.

Doe then requested a status conference with the district court to resolve the difference of opinion surrounding the scope of the plea agreement. The district court found that Doe was *not* obligated to testify pursuant to the plea agreement.[3] Anticipating Doe's refusal to testify, the government obtained authority to apply for a court order of immunity pursuant to 18 U.S.C. §§ 6001–6003 (1994).

At Roe's trial, Doe was called as a witness for the government. When asked about the postal robberies which occurred a few years earlier, Doe asserted his Fifth Amendment privilege against self-incrimination. The government presented the court with an *ex parte* application for an order compelling testimony, indicating that the government was prepared to offer immunity to Doe. Thereafter, the court ordered Doe to testify and allowed his counsel to explain the order to him. Despite the court's order that Doe testify or face contempt, Doe persisted in his refusal to testify. This exchange followed,

> THE COURT: All right. I would just inquire—I'm sure, Mr. Doe, that your counsel explained to you that you have been ordered by the Court to answer these questions and, if you still refuse to answer the questions, the Court may find that you are in contempt of Court for refusing to comply with a court order.
>
> The court could order then that you be incarcerated until such time as you either express a willingness to answer questions, in which case you would be brought back to the courtroom and asked questions again, giving you an opportunity to answer, or until these proceedings were [sic] complete. Do you understand that?
>
> THE WITNESS: Yes, ma'am.
>
> THE COURT: And understanding that, sir, that the Court has ordered you to answer the questions, do you still refuse to answer?
>
> THE WITNESS: Yes, ma'am.

---

**1.** Doe was brought to the same detention center which also housed his co-conspirators, a relative of a co-conspirator, and Roe. Pursuant to Doe's safety concerns, a segregation order was filed with the Bureau of Prisons. In response to allegations of threats of bodily harm, Doe had already been moved to four different institutions during his incarceration.

**2.** Rule 35 provides that:

(b) Reduction of Sentence for Changed Circumstances. The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.
Fed.R.Crim.P. 35(b).

**3.** Although the government continues to assert that the ruling regarding Doe's obligations under the plea agreement was erroneous, it chose not to appeal or file the dismissed section 924(c) charge in order to prosecute Doe's conduct and obtain review of the scope decision.

THE COURT: And you understand that the Court could order that you be incarcerated until you are willing to answer or until these proceedings are complete?

THE WITNESS: Yes, ma'am.

THE COURT: And understanding that, you still refuse to answer?

THE WITNESS: Yes, ma'am.

THE COURT: All right. Counselor?

PLAINTIFF'S COUNSEL: Nothing further, your Honor.

THE COURT: All right. Do you request that the Court, in fact, find the witness in contempt and order that he be incarcerated?

PLAINTIFF'S COUNSEL: Not at this time, your Honor.

In November 1995, the government filed an information charging Doe with criminal contempt pursuant to 18 U.S.C. § 401(3)[4] and Fed.R.Crim.P. 42(b).[5] The information charged that Doe disobeyed a lawful court order to testify during the criminal prosecution of Roe. In December 1996, Doe filed a motion to dismiss the information based on outrageous government conduct. Although the district court opined that the government's action in filing the information was "going further than the Government needs to go," the court refused to find that the government abused its discretion and denied the motion to dismiss. Following this ruling, Doe entered a conditional plea of guilty and was sentenced to one month imprisonment, to run consecutively to any undischarged period of custody. Doe has not yet begun to serve the term of imprisonment for the criminal contempt conviction and is currently in custody serving the prior term imposed for his robbery and weapon convictions.

### JURISDICTION

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231 as the information charged Doe with contempt pursuant to 18 U.S.C. § 401. We have jurisdiction pursuant to 28 U.S.C. § 1291 of this appeal from a final decision of a district court.

### STANDARD OF REVIEW

The district court's decision to deny a motion to dismiss an information based on constitutional issues raises questions of law subject to *de novo* review. *United States v. Garza–Juarez*, 992 F.2d 896, 903 (9th Cir. 1993). We "view[ ] the evidence in the light most favorable to the government and accept[ ] the [district] court's factual findings unless clearly erroneous." *United States v. Emmert*, 829 F.2d 805, 810–11 (9th Cir.1987). We review the district court's refusal to dismiss the information in the exercise of its supervisory powers for abuse of discretion. *United States v. Matta–Ballesteros*, 71 F.3d 754, 763 (9th Cir.1995), *amended*, 98 F.3d 1100 (9th Cir.1996); *Garza–Juarez*, 992 F.2d at 903.

### DISCUSSION

The district court may dismiss an information based on outrageous government conduct if the conduct amounts to a due process violation. *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir.1991). "If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss [an information] under its supervisory powers." *Id.* The court may exercise its supervisory powers "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations ...; or to deter future illegal conduct." *Id.; see also United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983);

---

**4.** Section 401, Title 18, of the United States Code provides in pertinent part:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as ...

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

18 U.S.C. § 401(3) (1994).

**5.** Rule 42(b) provides in relevant part:

A criminal contempt except as provided in subdivision (a) of this rule [regarding summary contempt] shall be prosecuted on notice.... The notice shall be given ... on application of the United States attorney ... by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides.

Fed.R.Crim.P. 42(b).

*United States v. Simpson,* 927 F.2d 1088, 1090 (9th Cir.1991).

## I.

### A. *Procedural Due Process*

Improper governmental conduct warrants dismissal of an information only if it is " 'so grossly shocking and so outrageous as to violate the universal sense of justice.' " *Garza–Juarez,* 992 F.2d at 904 (quoting *United States v. Ramirez,* 710 F.2d 535, 539 (9th Cir.1983)). "This has been described as 'an extremely high standard.' " *Id.* (quoting *United States v. Smith,* 924 F.2d 889, 897 (9th Cir.1991)). The government retains significant discretion as to whom to prosecute. *United States v. Carrasco,* 786 F.2d 1452, 1455 (9th Cir.1986). "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). While prosecutorial discretion is broad, it is not "unfettered," and is subject to constitutional constraints. *Id.* at 608, 105 S.Ct. at 1531 (quoting *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979)).

In asserting a violation of constitutionally protected rights, Doe must show that the government's filing of the information was so shocking to due process values that it must be dismissed. *See United States v. Montoya,* 45 F.3d 1286, 1300 (9th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995). Doe claims that the circumstances of this case demonstrate the outrageousness of the government's conduct. Doe asserts that the government did not need to call him as a witness against Roe as a conviction was obtained without Doe's testimony. Moreover, if the government believed that Doe's testimony was critical to its case, Doe argues that the government should have filed a motion to reduce sentence after which Doe would have testified. Doe also contends that the government's decision to file criminal contempt charges went further than necessary as the government was aware of the physical attacks and other hardships he suffered while in custody following his previous cooperation with the government.

When a witness is granted immunity and ordered to testify, refusal to testify may result in penalties for criminal contempt to punish the disobedient conduct of the witness. *United States v. Armstrong,* 781 F.2d 700, 705 (9th Cir.1986). "Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully disobeys the order." *United States v. Powers,* 629 F.2d 619, 627 (9th Cir.1980). Although Doe was not required to testify in the Roe case pursuant to the plea agreement, he was obligated to testify after the district court ordered him to do so. Doe was not relieved of his duty to testify simply because he desired additional "compensation" for his cooperation, via a sentence reduction, or because he had safety concerns. *See Armstrong,* 781 F.2d at 707 ("[T]he proper course of action, unless and until the court's order is invalidated by an appellate court, was for appellants to comply and cite the order as reversible error."); *Dupuy v. United States,* 518 F.2d 1295, 1295 (9th Cir.1975) ("[F]ear of physical harm does not excuse a witness from testifying.").

Doe also claims that his procedural due process rights were violated when neither the court nor the government corrected Doe's misunderstanding during the trial that he would be subject only to civil contempt if he continued to refuse to testify. Although Doe acknowledges that the district court had the authority and power to hold him in either civil or criminal contempt at the time he refused to testify, Doe claims that the government's failure to interject and request that the judge also advise Doe of the possibility of criminal contempt charges violated his right to due process. Doe asserts that the issue is not whether he was on notice of his contemptuous conduct, but whether he was misled regarding the consequences of that conduct. Doe's argument is unpersuasive. A defendant need not be formally warned about which type of contempt will be sought as long as he knew his refusal to testify under immunity was illegal and could result in legal punishment. *Armstrong,* 781 F.2d at 707 ("The critical inquiry is whether the appellants were aware that they were disobeying a lawful court order,

not whether they realized the nature of the punishment they could receive for disobeying that order.").

 Doe also claims that the government abused its prosecutorial discretion by filing criminal contempt charges after responding in the negative when asked by the court whether the government wished to hold Doe in contempt. Specifically, when the court asked if the government requests that the court find Doe in contempt and order that he be incarcerated, the government stated, "Not at this time, your honor." Although the government did not state definitively that it would file criminal contempt charges after trial, the conditional wording of its response was sufficient to imply that a future charge of contempt was being contemplated. The government's decision to wait until the conclusion of Roe's trial to file criminal contempt charges was not procedurally or substantively unconstitutional as a defendant need not be notified in court of a charge of contempt if he is prosecuted with the necessary procedure pursuant to Fed.R.Crim.P. 42(b). *See Powers,* 629 F.2d at 625 (criminal contempt prosecution under Rule 42(b) requires only notice of time and place of hearing to inform contemnor of nature of charge). In fact, the preference for in-court warning relates to summary contempt proceedings under Rule 42(a), not prosecutions such as this one, which provided notice and an opportunity to be heard pursuant to Rule 42(b). *See, e.g., Powers,* 629 F.2d at 624–25. It is true that this circuit has held that when a district court summarily holds a defendant in civil contempt for refusing to answer questions at the command of the court, in order also to prosecute criminally, a warning must be given that criminal penalties in addition to the civil contempt measures might be imposed for failure to answer. *See Daschbach v. United States,* 254 F.2d 687, 692 (9th Cir. 1958); *Yates v. United States,* 227 F.2d 848, 851 (9th Cir.1955). The district court, however, did not summarily hold Doe in civil contempt. The requirement of such a warning therefore does not apply here. *See United States v. Abascal,* 509 F.2d 752, 755 & n. 3 (9th Cir.1975) (factually distinguishing *Daschbach* and *Yates* ); *accord United States v. Petito,* 671 F.2d 68, 72–73 (2d Cir.1982).

 Moreover, the "least possible power" principle does not require the prosecutor to resort first to civil sanctions before seeking criminal sanctions for past behavior under Rule 42(b). *See NLRB v. A–Plus Roofing, Inc.,* 39 F.3d 1410, 1418 (9th Cir. 1994) (criminal contempt hearing held upon request of NLRB following contumacious behavior at NLRB proceedings). In *A–Plus Roofing,* we stated that,

> [t]he least power principle does not require that a court consider civil contempt before criminal contempt in all cases, only in those cases where it is attempting to coerce future behavior. When instead the end is punishment of past behavior, criminal contempt can be appropriate without civil contempt being considered first.

*Id.* In *Armstrong,* we also stated that,

> The Supreme Court's admonition in *Shillitani* [requiring the court to use "the least possible power adequate to the end proposed"] was intended to apply only when a judge initiates criminal contempt proceedings for the purpose of coercing future compliance with a court order, and not when an independent federal grand jury returns a criminal contempt indictment to punish past violations.

781 F.2d at 705–06 (referring to *Shillitani v. United States,* 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966)). Although *Armstrong* dealt with the inapplicability of the "least possible power" rule to the power of grand juries to return a criminal contempt indictment and *A–Plus Roofing* involved prior court approval to prosecute, the same rule should apply to a prosecutor's independent charging decision.

 Furthermore, the government retains broad prosecutorial discretion "[b]ecause the separation of powers mandates judicial respect for the prosecutor's independence." *Carrasco,* 786 F.2d at 1455. Such discretion should not be curtailed by an across the board application of the "least possible power" rule. When the potential duration of civil coercion is limited, civil contempt may be a futile sanction. *See United States v. Wilson,* 421 U.S. 309, 317 n. 9, 95 S.Ct. 1802, 1806 n. 9, 44 L.Ed.2d 186 (1975) (threat of civil contempt provides little incentive where contemnor is already

incarcerated); *United States v. North,* 621 F.2d 1255, 1263 (3d Cir.1980) (en banc). As both the district court and the government recognized, civil contempt would have had little to no coercive or punitive effect, because Doe was already incarcerated and the trial was within a few days of completion. *See North,* 621 F.2d at 1261 n. 9 (civil contempt found to be insufficient when contumacious actor is already incarcerated and is therefore unlikely to respond to threat of summary civil contempt).[6] Accordingly, we find that the government was within its discretion in filing only criminal contempt charges without first resorting to civil contempt and the district court did not err in finding no procedural due process violation warranting dismissal of the information.

### B. *Equal Protection*

■■■■ The equal protection component of the due process clause also imposes constitutional constraints on a prosecutor's discretion. Doe claims that the government, by refusing to request that the court hold him in contempt and then later charging him with contempt, demonstrated a personal and vindictive bias against Doe thereby denying him equal protection under the law. Doe maintains that a restriction on a prosecutor's charging discretion occurs when an alleged offense violates more than one statute. In that instance, a prosecutor must charge a defendant under the statute that is specifically tailored to the offense involved. *See Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980) ("[A] more specific statute will be given precedence over a more general one.").

In the present case, Doe contends that the government abused its discretion in charging Doe with criminal contempt rather than requesting that he be held in civil contempt. Had this been done, Doe would have been incarcerated until either he agreed to testify or the trial was over.[7]

Doe further contends that if his refusal to testify materially obstructed the proceedings,

an immediate remedy was necessary. Doe claims that if the government had acted in good faith, the government either would have proceeded immediately or would have declined civil contempt and not filed the information thereafter. Doe asserts that if he was held in civil contempt he would have had the opportunity to reconsider his decision and the government would have had the opportunity to have the requested testimony.

■■■■ We find Doe's arguments to be without merit. As we have already stated, civil contempt need not be pursued before criminal contempt charges may be brought, unless coercion of future behavior is sought. *See A–Plus Roofing, Inc.,* 39 F.3d at 1418.

■■■■ According to the government, the decision to file criminal contempt charges rather than requesting a finding of civil contempt was based on its attempt to enforce the plea agreement and to deter future government witnesses from defying cooperation agreements,[8] as well as the fact that Doe continued to refuse to testify even under immunity and the futility of civil contempt under the specific circumstances. As the proper purpose of criminal contempt is to vindicate the authority of the court and to punish past behavior, *see Powers,* 629 F.2d at 627, Doe has failed to show that the government abused its prosecutorial discretion or acted without a rational basis. As noted *supra,* the Roe trial lasted for only a few days and it is likely that holding Doe in civil contempt would have had little or no practical effect on his willingness to testify. Accordingly, we find that the government's decision to pursue criminal contempt rather than civil contempt was within the bounds of its prosecutorial discretion and did not violate Doe's right to equal protection.

### II.

■■■■ If improper government conduct does not rise to the level of a due process violation, the court may nonetheless dismiss an information under its supervisory powers.

---

6. *But see infra* note 7.

7. Although Doe was already in custody, Doe points out that the custody based on the contempt charge would interrupt the service of his time on the previous conviction. In this case,

however, the interruption would have lasted only a few days.

8. Although the district court's unappealed ruling that the plea agreement had been fulfilled weakens this basis, the other bases remain viable.

*Carrasco,* 786 F.2d at 1455. Dismissal is appropriate when the investigatory or prosecutorial process has resulted in a violation of a federal constitutional or statutory right and no lesser remedial action is available. *Barrera–Moreno,* 951 F.2d at 1092. If no constitutional or statutory violation can be identified, the remedial or deterrent goals cannot justify dismissal in a case. *Id.*

The district court may exercise its supervisory powers to dismiss an information in order to "remedy the violation of recognized rights, to deter illegal conduct, and 'to preserve judicial integrity.'" *Garza–Juarez,* 992 F.2d at 905 (quoting *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983)). This is a high standard, limiting the availability of the defense to extreme cases, *United States v. Smith,* 924 F.2d 889, 897 (9th Cir.1991), and even in some of the most egregious situations it has not been met. *See also Emmert,* 829 F.2d at 811–12 (confidential informant's offer of $200,000 to college student to locate supplier of cocaine was not outrageous conduct); *United States v. Simpson,* 813 F.2d 1462, 1466 (9th Cir.1987) (FBI's continued use of female informant after she became intimate with defendant was not outrageous conduct).

Doe argues that the same facts underlying the due process violation also support an exercise of the court's supervisory powers to dismiss the information. Given that the government's criminal contempt charge against Doe did not violate his constitutional rights and was not illegal, the only basis for relief would be to protect judicial integrity. Doe, however, presents no plausible argument to lead the court to conclude that judicial integrity was in any way offended by the government's use of its prosecutorial discretion in this case or would be by not dismissing the information. Doe cites to the record and the district court's cautionary words, but fails to acknowledge that the district court considered the factors weighing against criminal prosecution and found no abuse of prosecutorial discretion. We reach the same conclusion.

■ The government encouraged Doe to testify under the plea agreement. When that failed, it obtained a court order of immunity. When Doe refused to testify under the grant of immunity, it opted to file an infor-

mation (rather than an indictment), which capped the punishment at six months confinement. These actions gave Doe ample opportunity to cooperate, and in no way constitute abuse of prosecutorial discretion. Furthermore, in order to invoke the supervisory powers, there must be a showing of prejudice which Doe has not made. *United States v. Woodley,* 9 F.3d 774, 777 (9th Cir. 1993). Consequently, we find that the district court did not abuse its discretion in declining to exercise its supervisory powers with regard to the information charged against Doe.

■ The conduct of the government was not so outrageous as to constitute a due process violation, nor would the invocation of the court's supervisory powers have been proper. None of the facts presented by Doe, either independently or *in toto* compel dismissal of the information. A witness who has been granted immunity and been ordered to testify must do so, or risk punishment for criminal contempt. It is clear from the record that the government did not abuse its prosecutorial discretion. As the government activity in question does not appear to violate a protected right of Doe, the decision of the district court is affirmed.

**AFFIRMED.**