**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Guillermo LARA–ACEVES,
Defendant–Appellant.**

No. 98–50522.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1999.

Decided July 6, 1999.

1008

Benjamin L. Coleman, Federal Public Defender of San Diego, San Diego, California, for the defendant-appellant.

Maura F. Quinn, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BRUNETTI and WARDLAW, Circuit Judges, and SEDWICK,* District Judge.

WARDLAW, Circuit Judge:

Guillermo Lara–Aceves ("Lara") appeals his judgment of conviction and sentence received after entering a guilty plea to violating 8 U.S.C. § 1326, for being a deported alien found in the United States subsequent to conviction of an aggravated felony. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

In so doing, we reaffirm *United States v. Robles–Sandoval,* 637 F.2d 692 (9th Cir. 1981), which held that the use of a prior deportation proceeding as an element of the criminal offense of reentry under 8 U.S.C. § 1326 does not violate the Fifth Amendment to the United States Constitution, and further hold that in the absence of a basis for collateral attack of the proceedings under *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), such use does not violate the Sixth Amendment. We also conclude that, pursuant to this Court's recent decision in *United States v. Estrada–Torres,* 179 F.3d 776 (9th Cir.1999), Lara's 1987 conviction under California Health and Safety Code § 11360(a) for selling/furnishing a controlled substance constitutes an "aggravated felony" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A). Finally, we reject Lara's contention that the Sentencing Guidelines are unconstitutionally inconsistent because they require inclusion of Lara's prior state conviction in the calculation of the adjusted offense level but exclusion from the criminal history calculation.

**I.**

 We review Lara's constitutional challenge to 8 U.S.C. § 1326 de novo. *See*

*Confederated Tribes of Siletz Indians v. United States,* 110 F.3d 688, 693 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 625, 139 L.Ed.2d 606 (1997). We also consider de novo whether the aggravated felony provision is applicable. *See Estrada–Torres,* 179 F.3d at 781 (citing *United States v. Fuentes–Barahona,* 111 F.3d 651, 652 (9th Cir.1997)). The constitutionality of the Sentencing Guidelines is a question of law reviewed de novo. *See United States v. Johnson,* 130 F.3d 1352, 1354 (9th Cir. 1997).

**II.**

Lara is a citizen and national of Mexico. In 1987, he pled guilty to selling marijuana in violation of California Health and Safety Code § 11360(a). Following his conviction, Lara was deported on five occasions.[1] On January 16, 1998, a Border Patrol agent observed Lara running northbound on Interstate 5, one mile north of the San Ysidro, California, Port of Entry. The agent apprehended Lara, at which time Lara admitted that he was a citizen and national of Mexico. A computerized records check revealed that Lara had a prior immigration and criminal history.

On March 4, 1998, a grand jury charged Lara with being an alien found in the United States after deportation following conviction of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Lara moved to dismiss the indictment, arguing that the use of an administrative deportation order as an element of a § 1326 offense violates due process. The district court rejected Lara's due process argument and denied the motion to dismiss. It granted Lara's motion to strike the aggravated felony allegations in the indictment, pursuant to *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (holding that § 1326(b)(2) constitutes a sentencing

---

* Hon. John W. Sedwick, United States District Judge, for the District of Alaska, sitting by designation.

1. Lara's deportations occurred on September 27, 1996, November 22, 1996, June 2, 1997, April 22, 1997, and October 8, 1997.

factor and not a separate offense). On May 26, 1998, Lara entered a conditional guilty plea on the § 1326(a) charge, preserving various issues for appeal.

In its presentence report, the United States Probation Office recommended a sixteen level increase over Lara's base offense level of eight, pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2L1.2(b)(1)(A), after determining that Lara's conviction for violation of California Health and Safety Code § 11360(a) was an aggravated felony. Because Lara's state conviction was more than ten years old, however, it was not counted in the criminal history calculation, pursuant to U.S.S.G. § 4A1.2(e)(3).

At his sentencing hearing on August 17, 1998, Lara contended that he did not qualify for a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A) because his prior conviction was too remote in time to be counted in his criminal history category calculation. Lara further argued that, even if his prior conviction was properly considered in the offense level determination, it was not an aggravated felony, and therefore the base offense level was properly increased by only four levels. The district court rejected Lara's legal arguments, but departed downward six levels based on the "totality of the circumstances." Lara was sentenced to twenty-four months in custody. This appeal followed.

### III.

■ Lara contends that 8 U.S.C. § 1326 violates due process because it uses the outcome of an administrative adjudication—an order of deportation—as an element of the offense. He contends that without his allegedly unreliable deportation orders, he was subject only to prosecution for a misdemeanor violation of 8 U.S.C. § 1325, improper entry by an alien, rather than for the felony with which he was charged. This argument is without merit.

■ In *United States v. Alvarado–Delgado,* we held that lawfulness of the predi-

cate deportation is not an element of the § 1326 offense and therefore a defendant is not entitled to have that issue determined by a jury. 98 F.3d 492, 493 (9th Cir.1996) (en banc), *cert. denied,* 519 U.S. 1155, 117 S.Ct. 1096, 137 L.Ed.2d 228 (1997). Nonetheless, under *Mendoza–Lopez,* a defendant in a § 1326 prosecution may challenge the government's proof of a prior deportation if the deportation proceeding was so procedurally flawed that it "effectively eliminate[d] the right of the alien to obtain judicial review." 481 U.S. at 839, 107 S.Ct. 2148. To bring a successful collateral attack, however, the defendant must demonstrate prejudice as a result of the alleged error in the deportation proceeding. *See United States v. Proa–Tovar,* 975 F.2d 592, 595 (9th Cir.1992) (en banc).

Lara concedes he has no basis upon which to collaterally attack the validity of his underlying deportation. He relies solely on the argument that § 1326 runs afoul of the due process protections of the Fifth and Sixth Amendments because it utilizes an administrative adjudication as an element of the criminal offense. Specifically, Lara maintains that the absence of a right to counsel, the relaxed use of the rules of evidence, and the lesser burden of proof (clear and convincing evidence) in deportation proceedings render their later use as an element of a criminal prosecution a due process violation.

■■ It is axiomatic that civil and criminal proceedings differ substantially. Therefore, "the full panoply of ... procedural and substantive safeguards which are provided in a criminal proceeding are not required at a deportation hearing." *United States v. Solano–Godines,* 120 F.3d 957, 960–61 (9th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 722, 139 L.Ed.2d 661 (1998). Given the civil nature of deportation proceedings, it is well established that aliens in such proceedings have no constitutional right to counsel under the Sixth Amendment. *See Magallanes–Damian v. INS,* 783 F.2d 931, 933 (9th Cir. 1986).

■ Nonetheless, aliens in deportation proceedings are to be "accorded due process." *Espinoza v. INS,* 45 F.3d 308, 310 (9th Cir.1995). We previously have concluded that the use of a deportation proceeding as an element of a § 1326 prosecution comports with the strictures of due process under the Fifth Amendment to the United States Constitution. In *Robles–Sandoval,* we found that a deportation order which the defendant conceded was proper "validly created the status of deportee for appellant and did so with all the procedural safeguards due him." 637 F.2d at 693.[2]

Well before *Robles–Sandoval,* the Supreme Court upheld the use of an administrative determination as the basis of a criminal proceeding in *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). In *Yakus,* the Court considered the constitutionality of the Emergency Price Control Act of 1942, which created the Office of Price Administration and gave the Price Administrator authority to promulgate regulations imposing price controls on certain items. *Id.* at 419–20, 64 S.Ct. 660. Under the Act, any person affected by such a regulation could file an administrative protest and, if dissatisfied with the administrative ruling, could appeal to an Emergency Court of Appeals. The protestor could also petition for review in the Supreme Court. *See id.* at 428–29, 64 S.Ct. 660. The Act provided that this means of review was exclusive— no other court could review a regulation's validity. *See id.* at 429, 64 S.Ct. 660.

The criminal defendants in *Yakus* were charged with violating a price regulation. Failing to use the review procedures delineated in the Act, the defendants attempted to attack the validity of the price regulation at their criminal trial. *See id.* at 431, 64 S.Ct. 660. The Court held the defendants did not have a due process right to raise such a challenge at trial, reasoning that persons affected by the regulation were required to attack it using the procedures created by the Act and that "the authorized procedure is not incapable of affording the protection to petitioners' rights required by due process." *Id.* at 435, 64 S.Ct. 660. The Court noted that due process safeguards existed in the defendants' right to attack the validity of the regulation before the administrative body and, if still dissatisfied, to appeal that decision to a court.[3] *See id.* at 444, 64 S.Ct. 660 (stating the significance of "an opportunity to be heard and for judicial review which satisfies the demands of due process, as is the case here"). Likewise, in a § 1326 prosecution, the validity of the underlying deportation order may not be subject to attack at the criminal trial, but other avenues of judicial review of the deportation proceeding are available.[4]

Lara asserts that our holding in *Robles–Sandoval* is of diminished precedential value, citing "subsequent developments in section 1326 law." Lara points to the 1996 enactment of § 1326(d), which limits a defendant's ability to seek collateral judicial review of a deportation order in a later criminal proceeding,[5] as well as a footnote

---

**2.** We noted, "[i]f … the underlying proceeding had been flawed, this case would be entirely different." *Id.* at 693.

**3.** Justice Rutledge dissented, expressing concern over the use of an administrative finding in a later criminal proceeding. Lara relies heavily on Justice Rutledge's dissent for the proposition that § 1326 is unconstitutional. Given that Justice Rutledge's view has never been adopted by a majority of the Court, and *Yakus* remains the law of the land, Lara's reliance on that dissent is unavailing.

**4.** An alien may appeal his deportation order to the Board of Immigration Appeals, and then to the appropriate United States Court of Appeals. The alien may also file a habeas petition under 28 U.S.C. § 2241. Further, in *Mendoza–Lopez,* the Supreme Court stated that if the alien was denied access to this appellate process, collateral review of the deportation order in the district court will be permitted prior to trial. 481 U.S. at 837–39, 107 S.Ct. 2148.

**5.** Section 1326(d) prohibits collateral attack unless the defendant alien demonstrates the following:

**1012**

in *Mendoza–Lopez,* in which the Court found the use of the result of an administrative proceeding to establish an element of a criminal offense "troubling." 481 U.S. at 838 n. 15, 107 S.Ct. 2148.

Despite Lara's assertions to the contrary, *Robles–Sandoval* stands on firm ground. Limitations on a defendant's ability to collaterally attack a deportation proceeding in a § 1326 prosecution do not limit the due process protections afforded to aliens at the underlying deportation proceeding, nor do such limitations entirely preclude judicial review of deportation proceedings. Moreover, an observation in a footnote of a Supreme Court decision, while perhaps indicative of the Court's inclination should the issue properly arise,[6] does not undermine a decision of this court.[7]

■ Lara attempts to distinguish *Robles–Sandoval* on the basis that our decision there, unlike here, hinged on the Fifth Amendment as opposed to the Sixth Amendment. Specifically, Lara argues that he was deprived of his Sixth Amendment rights because he was without counsel at the deportation proceeding and, therefore, it cannot be used for any purposes relative to his § 1326 conviction. Although a defendant in a deportation proceeding has no Sixth Amendment right to counsel, due process must be afforded. *See Magallanes–Damian,* 783 F.2d at 933. Therefore, any right Lara may have to counsel is grounded not in the Sixth Amendment, but in the Fifth Amendment

guarantee of due process, as outlined in *Robles–Sandoval.* Although we did not expressly so hold in *Robles–Sandoval,* our discussion there of the right to counsel, and express analogy to uncounseled prior conviction cases, indicated our incorporation of the right to counsel into the Fifth Amendment's fundamental guarantees of due process in deportation proceedings. To the extent the discussion in *Robles–Sandoval* did not clearly elucidate this principle, we make it clear today.

**IV.**

■ Lara argues that his 1987 conviction for violation of California Health and Safety Code § 11360(a) is not an "aggravated felony" as defined by the Sentencing Guidelines. *See* U.S.S.G. § 2L1.2(b)(1)(A). The distinction is critical because, in a § 1326 case, the district court must impose a sixteen-level enhancement on the base offense level if the prior deportation occurred subsequent to an aggravated felony conviction, whereas only a four-level increase attaches if the deportation followed a conviction for a non-aggravated felony. U.S.S.G. §§ 2L1.2(b)(1)(A) and (B).

Since the briefing and argument of this case, however, we have rejected the argument that a § 11360(a) conviction does not constitute an aggravated felony. *See Estrada–Torres,* 179 F.3d at 781 (holding that any violation of Cal. Health & Safety Code § 11360(a) is an aggravated felony). Accordingly, the district court properly in-

---

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (1996).

**6.** We do not attempt to predict whether the Court would find the use of an administrative proceeding as an element of a criminal prosecution impermissible if the issue were raised today. *Mendoza–Lopez* was a five-to-four decision with two dissenting opinions. Justice

Rehnquist authored a dissenting opinion, in which Justices White and O'Connor joined. *See Mendoza–Lopez,* 481 U.S. at 842, 107 S.Ct. 2148. Also dissenting was Justice Scalia, who wrote, "I think it clear that Congress may constitutionally make it a felony for deportees—irrespective of the legality of their deportations—to reenter the United States illegally." *Id.* at 847, 107 S.Ct. 2148.

**7.** We have, however, acknowledged the Supreme Court's "hint" in *Mendoza–Lopez. See United States v. Villa–Fabela,* 882 F.2d 434, 438 n. 1 (9th Cir.1989), *overruled by United States v. Proa–Tovar,* 975 F.2d 592 (9th Cir. 1992).

creased Lara's base offense level by sixteen levels.

## V.

Lastly, Lara asserts that the simultaneous inclusion of his prior conviction for purposes of the offense level determination, and its exclusion from his criminal history category calculation renders the Sentencing Guidelines incapable of being read as a consistent statutory framework.[8] The district court included the prior conviction in the calculation of the offense level pursuant to U.S.S.G. § 2L1.2 as an "aggravated felony," but excluded it in determining Lara's criminal history points pursuant to U.S.S.G. § 4A1.2(e), which prohibits counting a prior sentence not imposed within ten years of the commencement of the instant offense. Lara contends that, as a result of this alleged inconsistency, the Guidelines run afoul of the Fifth Amendment's protection against punishment based on arbitrary distinctions.[9] While we have previously held that the same prior conviction properly may be counted as to *both* the offense level and criminal history category, *United States v. Luna–Herrera,* 149 F.3d 1054, 1055 (9th Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 916, 142 L.Ed.2d 913 (1999), we have not yet considered whether it may be counted toward one, but not the other, calculation. We hold that it may.

That this use of a prior conviction undermines the statutory framework is directly refuted by the plain language of the Sentencing Guidelines. Application Note 1 to U.S.S.G. § 2L1.2 defines an aggravated felony as a crime listed in 8 U.S.C. § 1101(a)(43) "without regard to the date of conviction of the aggravated felony." Moreover, Amendment 562 to the Sentencing Guidelines, effective November 1, 1997,

removed any time restrictions from the definition of an aggravated felony. This suggests that the Sentencing Commission intended an aggravated felony to enhance the base offense level regardless of when it was committed. Finally, as further evidence that remoteness of a prior conviction is irrelevant to the offense level enhancement, we recently held that even before Amendment 562 "domestic crimes for which the term of imprisonment was completed more than 15 years prior to sentencing do trigger the 16–level enhancement of U.S.S.G. § 2L1.2(b)(2)." *United States v. Gonzalez–Mendez,* 150 F.3d 1058, 1060 (9th Cir.1998).

The Seventh and Eighth Circuits have also considered and rejected the argument that the disparate treatment in the Sentencing Guidelines of a prior conviction in the calculation of the offense level and criminal history category creates a statutory inconsistency. In *United States v. Gonzalez–Mendez,* a defendant charged with illegal reentry under § 1326 challenged as inconsistent the inclusion of his prior aggravated felony conviction for purposes of his offense level calculation, because that conviction was too remote in time to be included in determining his criminal history category. 112 F.3d 1325, 1329 (7th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 396, 139 L.Ed.2d 309 (1997). The Seventh Circuit held that differing policy considerations underlying the offense level and criminal history calculations rendered the two provisions consistent:

> Although both [U.S.S.G. § 2L1.2(b)(2) and U.S.S.G. § 4A1.2] determine the impact of past crimes on a current sentence, each section does so for a different reason. Thus, the 15–year limit on criminal history calculations does not signal an intent to similarly limit the

---

8. "It is a basic rule of statutory construction 'that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless.'" *United States v. Powell,* 6 F.3d 611, 614 (9th Cir. 1993) (internal citation omitted).

9. "The Due Process Clause of the Fifth Amendment precludes the imposition of punishment based on arbitrary distinctions, and, in the sentencing context, 'essentially duplicates' an argument based on equal protection." *United States v. Fine,* 975 F.2d 596, 604 (9th Cir.1992).

aggravated felony enhancement under § 2L1.2(b)(2). The aggravated felony enhancement is a specific offense characteristic used to determine the proper offense level for the crime of reentering the United States after deportation. As such, it is a measure of the seriousness of the crime committed, ratcheting up the sentence because it is a more serious offense to return after deportation when the defendant has previously committed a serious crime-an aggravated felony. In other words, we find it particularly troublesome to have illegal aliens returning who are not just illegal aliens, but also criminals. The criminal history category, however, serves the different purpose of evaluating the likelihood that any defendant will commit another crime in the future. It judges recidivism more generally.

*Id.* (citing *United States v. Maul–Valverde,* 10 F.3d 544, 547 (8th Cir.1993), *overruled on other grounds by United States v. Diaz–Diaz,* 135 F.3d 572 (8th Cir.1998)).

In *Maul–Valverde,* the district court refused to include a prior aggravated felony conviction when determining the defendant's offense level in a § 1326 prosecution, reasoning that to do so would produce an inconsistent result, given that the conviction was too remote in time to be included in the criminal history category. 10 F.3d at 545–46. The Eighth Circuit reversed, reasoning that the policy concerns underlying the measure of the offense level and the calculation of the criminal history category justified the differing treatment of prior convictions. The court noted that, "the criminal history section is designed to punish likely recidivists more severely, while the enhancement under § 2L1.2 is designed to deter aliens who have been convicted of a felony from reentering the United States." *Id.* at 547.

Relying on the plain language of the Sentencing Guidelines and the distinct policies underlying the calculation of the offense level and criminal history category, as well as the reasoning of our sister circuits, we hold that the treatment of Lara's

prior aggravated felony conviction under the Sentencing Guidelines does not create a statutory inconsistency. We therefore affirm the judgment of the district court.

AFFIRMED.