UNITED STATES of America,
Plaintiff–Appellee,

v.

Sacramento HINOJOSA–PEREZ,
Defendant–Appellant.

No. 98–30304.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1999

Filed March 13, 2000

Michael S. Taggart, Assistant Federal Defender, Anchorage, Alaska, for the defendant-appellant.

William C. Brown, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: REAVLEY,[1] BOOCHEVER, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Sacramento Hinojosa–Perez ("Hinojosa") appeals his felony conviction for reentering the country after deportation, in violation of 8 U.S.C. § 1326. The threshold and dispositive issue in this case is whether Hinojosa's failure to exhaust administrative remedies available to challenge his underlying order of deportation precludes him pursuant to 8 U.S.C. § 1326(d) from collaterally attacking the order in this case. We have jurisdiction pursuant to 28 U.S.C. § 1294. We hold that his administrative failure is fatal to his challenge, and we affirm the district court.

## I

### Background

Sacramento Hinojosa–Perez illegally entered the United States from Mexico in 1991. Following a conviction on November 3, 1992, in Anchorage, Alaska, for shoplifting, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against him by personally serving on him an Order to Show Cause dated October 25, 1993. The Order to Show Cause required Hinojosa "to provide written notice, within five (5) days, of any change in [his] address or telephone number to the office [sic] of the Immigration Judge listed in this notice." It warned that failure to appear at any hearing of which he had been notified at his last reported address could result in deportation "in your absence." The order concluded by again stating: "You must report any changes of your address or telephone number in writing to this office," followed by the address of the Office of the Immigration Judge ("OIJ"). The Order to Show Cause was written in English and Spanish, and the INS Agent who served it read it to Hinojosa in Spanish.

At a deportation hearing in Anchorage on June 6, 1994, at which Hinojosa was represented by counsel, Hinojosa conceded deportability. The immigration judge denied Hinojosa's request to depart voluntarily, and ordered him deported. Three days later, on June 9, 1994, Hinojosa appealed to the Bureau of Immigration Appeals ("BIA") the denial of his request for

---

1. The Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

voluntary departure. He was released pending resolution of his appeal.

During the summer of 1994, Hinojosa corresponded with the BIA from an address on Thirteenth Avenue in Anchorage, the address he had given on his Notice of Appeal. At some point, the Office of the Immigration Judge obtained this address from the BIA. In August of 1994, Hinojosa moved to a new address on Muldoon Road. Hinojosa notified the INS of the move, but did not separately notify the BIA or the OIJ. In early January of 1995, Hinojosa moved again, to Tenth Avenue. He did not notify any agency of this move or of his new address. The record made by Hinojosa in this case does not contain any evidence that he made arrangements to have his mail forwarded to his new Tenth Avenue address.

On January 23, 1995, shortly after Hinojosa's move from Muldoon Road, Hinojosa prevailed on his appeal. The BIA reversed the immigration judge's denial of Hinojosa's request for voluntary departure, and remanded the matter for further proceedings. On January 27, 1995, the OIJ sent notice of the remand hearing to Hinojosa by certified mail to his address on Thirteenth Avenue. The INS had not provided the newer Muldoon Road address to the OIJ. Hinojosa's brother, Pablo Hinojosa, signed for the letter, but Hinojosa claims he never received it. Hinojosa failed to appear for the hearing at which the sole choice was deportation or voluntary departure. The Immigration Judge ordered him deported *in absentia*.

The INS arrested Hinojosa on August 18, 1995, when he appeared with his wife for an interview regarding an application to adjust his immigration status based on their marriage. Eight days later, on August 26, 1995, he was deported to Mexico. He had not made any attempt to challenge this deportation order.

Hinojosa unlawfully reentered the United States in August, 1996. On September 10, 1996, he was adjudged guilty in Anchorage District Court of misdemeanor disorderly conduct. On March 18, 1997, he was adjudged guilty in the same court of misdemeanor driving while under the influence and resisting an officer. The INS apprehended Hinojosa, reinstated the deportation order, and deported him again in late November 1997.

Undaunted, Hinojosa again unlawfully entered the United States in January 1998. On February 23, 1998, he was adjudged guilty under the false name Alfredo Perez in Anchorage District Court of misdemeanor assault and sentenced to 30 days in jail. This time, he was charged by the government with one count of reentry without permission following deportation, in violation of 8 U.S.C. § 1326(a).

Hinojosa moved to dismiss the information on the ground that the original deportation order issued in 1995 had been obtained in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. His motion was based on a claim of defective notice of the hearing. At first, the district court granted the motion, ruling that notwithstanding the fact that Hinojosa no longer lived on Muldoon Road, notice of the remand hearing was insufficient because it had not been mailed to the Muldoon Road address that Hinojosa had provided to the INS, but not the OIJ. The district court found that the most recent address that Hinojosa had provided for purposes of the deportation proceedings was the Muldoon Road address. Although Hinojosa had moved from that address before the notice was mailed, the district court speculated that Hinojosa "might well have received actual notice" had it been sent to that address. The district court rejected the government's argument that Hinojosa's failure to exhaust administrative remedies as required by 8 U.S.C. § 1326(d) precluded him from attacking his underlying deportation.

The government moved for reconsideration in light of 8 C.F.R. § 3.15(c)(2) (1995), (now 8 C.F.R. § 3.15(d)(2) (1999)), which

requires aliens in deportation proceedings to provide changes of address to the OIJ. Because the Muldoon Road address had been provided only to the INS, the district court found that the Thirteenth Avenue address was the last address provided according to the terms of the regulation. The district court vacated its previous order and reinstated the information. The court failed to mention the government's exhaustion argument in its new order. A jury convicted Hinojosa of violating § 1326(a).

Hinojosa has finished serving his sentence, and at the time this appeal was argued, was awaiting deportation to Mexico. On appeal, he reasserts his collateral challenge to the underlying deportation order and appeals the district court's refusal to dismiss the information.

## II

## Standard of Review

 We review the denial of Hinojosa's motion to dismiss the information *de novo*. *See United States v. Doe*, 125 F.3d 1249, 1253 (9th Cir.1997), *cert. denied*, 522 U.S. 1138, 118 S.Ct. 1100, 140 L.Ed.2d 154 (1998). We review the district court's findings of fact regarding the motion to dismiss for clear error. *See United States v. Lazarevich*, 147 F.3d 1061, 1065 (9th Cir.), *cert. denied*, 525 U.S. 975, 119 S.Ct. 432, 142 L.Ed.2d 352 (1998).

## III

## Discussion

### A.

On May 14, 1998, Hinojosa filed as indicated a motion to dismiss the information on the ground that a constitutional defect in the proceedings resulting in the underlying deportation order rendered the order defective as a predicate for a section 1326(a) prosecution. The defect Hinojosa identified was a lack of proper notice of the 1995 hearing in which he was ordered deported *in absentia*.

In response to Hinojosa's motion, the government raised *inter alia* 8 U.S.C. § 1326(d), which became effective on April 24, 1996. Section 1326(d) expressly provides that in a post-April 24, 1996 prosecution under section 1326, "an alien may not challenge the validity of the deportation order" unless the alien demonstrates (1) that he or she "exhausted any administrative remedies that may have been available to seek relief against the order," § 1326(d)(1) (1999); (2) that the "proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review," § 1326(d)(2); and (3) that "the entry of the order was fundamentally unfair," § 1326(d)(3). *See United States v. Lara–Aceves*, 183 F.3d 1007 (9th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 836, 145 L.Ed.2d 702 (2000); *United States v. Estrada–Torres*, 179 F.3d 776 (9th Cir.1999); *United States v. Wittgenstein*, 163 F.3d 1164 (10th Cir.1998), *cert. denied*, 527 U.S. 1012, 119 S.Ct. 2355, 144 L.Ed.2d 250 (1999). The government argued that because Hinojosa failed administratively to contest the 1995 deportation order, he was barred by section 1326(d) from doing so in this criminal case. The government pointed out that Hinojosa did not challenge the order either in 1995, or in 1997 when the order was reinstated and he was deported for a second time. To quote the government after it summarized Hinojosa's checkered history, "[t]he defendant therefore failed to exhaust any administrative remedy he may have had to attack the validity of the April, 1995, *in absentia* order."

 Because the government referred to the 1997 proceeding in its opposition to Hinojosa's motion and during the trial, Hinojosa asks us not to consider the exhaustion argument on appeal, citing *United States v. Robertson*, 52 F.3d 789 (9th Cir.1994), in which we repeated the rule that "[i]ssues not presented to the district court cannot generally be raised for the first time on appeal." *Id.* at 791 (citation

omitted). Hinojosa's argument is that the government did not raise exhaustion in the district court because the government did not adequately focus its exhaustion argument on the 1995 order. We respectfully decline to honor Hinojosa's request. The record indicates that the section 1326(d) exhaustion issue was timely raised by the government in district court. The government's focus may have been broader than necessary, but the inclusion of a reference to the 1997 deportation proceeding strikes us as immaterial: exhaustion was raised in a manner sufficient to preserve it on appeal.

## B.

■ The record clearly indicates that Hinojosa received on October 25, 1993, at the onset of the deportation proceeding, an Order to Show Cause. The order was written in English and Spanish, and an agent read it to him in Spanish when it was personally served. The order, as delivered and read, advised Hinojosa *inter alia* that a deportation order could issue in his absence if he failed to appear as required; and furthermore that any deportation order issued in his absence could be rescinded if he did not receive the required notice of the hearing. The order explicitly notified Hinojosa that he could file a motion to reopen the hearing, and it identified a failure to receive written notice as a basis to file such a motion. Notwithstanding this specific written and oral notice, Hinojosa did not avail himself of this opportunity to file a motion to reopen. It is apparent to us that had he done so, he could have raised and litigated the very same defenses to the deportation that he attempts to raise today.

Although only eight days elapsed between his arrest on August 18, 1995 and his deportation pursuant to the *in absentia* order, we conclude that eight days was a sufficient period for Hinojosa to have challenged the order for lack of proper notice.[2] All he had to do was to file a motion to reopen for the purpose of challenging the validity of the order. The filing of the motion itself would · have automatically stayed his deportation pending resolution of his claim of defective notice. *See* 8 U.S.C. § 1252b(c)(3) (repealed Sept. 30, 1996); *Zapon v. United States Dept. of Justice,* 53 F.3d 283, 284 (9th Cir.1995). We note also that he was familiar with the appeal process and had successfully used it to his advantage earlier in the very same proceedings. In fact, he filed a notice of appeal to the BIA from the June 6, 1994, order of deportation just three days after the order was issued. The appearance of an attorney from Catholic Social Services on his behalf at the original deportation hearing demonstrates his awareness of the availability through Catholic Social Services of free legal assistance. Under these circumstances, we conclude that remedies were readily available to him, *see* 8 U.S.C. § 1326(d)(1), but that he did not exhaust them.

■ We conclude also that Hinojosa has not demonstrated that the proceedings improperly deprived him of the opportunity for judicial review. *See id.* § 1326(d)(2). Had he failed administratively to prevail with the BIA on his defective notice claim in a motion to reopen, the doors to the courts were open to his lack of notice due process argument. *See Zapon,* 53 F.3d at · 285 ("[F]ederal courts regularly grant emergency relief against arbitrary rulings in immigration procedures....").

■ Finally, we conclude that the entry of the *in absentia* order was not fundamentally unfair. In its original order granting Hinojosa's motion to dismiss, the district court found that notice to the Muldoon road address "might well" have reached Hinojosa. We find no evidence in the record, circumstantial or otherwise, to

2. We note that Federal Rule of Appellate Procedure 4(b) restricts the right to file a notice of appeal in a criminal case to 10 days.

support this finding. Hinojosa failed as it was his burden to (1) provide any evidence or suggestion that he had left a forwarding address when he moved from Muldoon Road, or (2) tender any evidence that any person remaining at that address knew how to contact him or ever passed correspondence on to him, or (3) offer any material evidence bearing on the likelihood that he might have received notice mailed to the Muldoon Road address. Under these circumstances, Hinojosa's attempt to claim prejudice from the failure to send notice to a place where he no longer lived is unpersuasive. Hinojosa had been adequately warned of his responsibility to keep his address current. The sole cause of the alleged lack of notice was his utter lack of diligence. On this record, the failure of Hinojosa to advise anyone of his move to Tenth Avenue was entirely his fault. *See United States v. Estrada–Trochez*, 66 F.3d 733, 736 (5th Cir.1995) (indicating that a subject of deportation proceedings who fails to keep his address current shall bear the burden of that failure). We therefore conclude in the light of (1) his failure to carry the burden placed on him by section 1326(d), (2) the fair warning he had been given of the consequences of his failure to appear, and (3) his receipt of actual notice of how to challenge an *in absentia* deportation order, that his conviction must be affirmed.

AFFIRMED.

BOOCHEVER, Circuit Judge, dissenting:

The record is unequivocal that the government raised exhaustion before the district court exclusively in connection with the 1997 reinstatement proceedings. It did not raise failure to exhaust administrative remedies in connection with Hinojosa's 1995 deportation. Consequently, there is no factual record from which this court may evaluate whether Hinojosa knowingly and intelligently decided not to pursue administrative review of his deportation order during the eight days he was detained

pending deportation in 1995. The government waived the exhaustion issue when it failed to raise it in a manner sufficient to create an adequate record for appellate review.

On the merits, I would hold that the district court erred in finding that the government satisfied the requirements of due process when it failed to send notice to the last address that Hinojosa reported to the INS. Due process requires notice "reasonably calculated to ensure that notice reaches the alien." *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir.1997) (quotations omitted). Notice reasonably calculated to reach Hinojosa should have been sent to his last reported address at Muldoon Road, and not the Thirteenth Avenue Address from which he had previously corresponded with the OIJ.

The government's position is not saved by regulations requiring address changes to be reported solely to the OIJ. *See* 8 C.F.R. § 3.15(c)(2) (1995). Congress has commanded the Attorney General to establish a central recording system for address changes provided by aliens. *See* 8 U.S.C. § 1252b(c)(1) (Supp. V 1993) (repealed 1996); 8 U.S.C. § 1229(a)(3) (Supp. II 1996). The point of a central system is to ensure that notice will be sent to the last reported address of which the government is aware. That point is entirely defeated when the government refuses to acknowledge any address change not reported to a single designated subagency.

It is true that Hinojosa had again moved from his most recently provided address at Muldoon Road when notice of the deportation hearing should have been sent there. As a result, it may be the case that failure to send notice to his last-reported address was harmless, because Hinojosa would not have received notice there either. I would remand this intrinsically factual issue to the district court.