**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-40092**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**CRISTINO SIERRA-HERNANDEZ,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

October 8, 1999

Before JONES, DeMOSS and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Cristino Sierra-Hernandez appeals from a guilty plea conditioned on the district court's denial of his motion to dismiss the indictment for loss of testimonial evidence.[1] Because the district court properly found that the defendant failed to show that the testimony of the deported witnesses would have been material and favorable, th0is Court affirms his conviction and sentence.

---

[1] Under Fed.R.Crim.P. 11(a)(2) a defendant may enter a conditional plea and reserve the right to appeal the adverse determination of "any specified pretrial motion." Fed.R.Crim.P. 11(a)(2). Even though conditional pleas are usually entered where a defendant seeks to suppress evidence against him, nothing in the language of the rule precludes a defendant from entering a conditional plea in this context as well.

**FACTS**

On July 23, 1997 Border Patrol Agents in Brownsville, Texas saw a white van stop on the side of the road. As the agents drove past, they saw several individuals who appeared to be aliens run and get into the van from behind a nearby bush. When the agents stopped the van shortly thereafter, they found twelve illegal aliens inside the van, and Sierra-Hernandez driving the van. Sierra-Hernandez and the illegal aliens were then arrested.

The following day, the government deported ten of the illegal aliens. On August 5, 1997, Sierra-Hernandez was charged with transporting the two illegal aliens detained as material witnesses: Anselmo Gutierrez-Zendejas and Hector Sanchez-Aguilar.

Sanchez-Aguilar testified in his deposition that Sierra-Hernandez facilitated his illegal entry into the United States and that Sierra-Hernandez was the driver of the white van. Previously, Sanchez-Aguilar had given a voluntary statement to defense counsel in which he denied knowing Sierra-Hernandez. Gutierrez-Zendejas, the other material witness, testified that he crossed the border on his own, happened upon the group in the brush and followed them into the car, but never saw the face of the driver.

For purposes of the guilty plea, Sierra-Hernandez admitted that he had transported the twelve illegal aliens. He also acknowledged that he knew the individuals were illegally in the United States and that in giving them a ride he was advancing their illegal presence in the United States. He repeated this

2

admission to the probation officer who prepared his presentence report.

On appeal, Sierra-Hernandez argues that: 1) the deportation of the ten illegal aliens violated his rights under the Fifth and Sixth Amendments; and 2) the difference in treatment of potential material witnesses by the Houston and the Brownsville divisions of the Southern District of Texas violates equal protection.

**STANDARD OF REVIEW**

Constitutional challenges are questions of law that are reviewed de novo. See <u>United States v. Lampton</u>, 158 F.3d 251, 255 (5th Cir. 1998).

**DISCUSSION**

I. DUE PROCESS

Sierra-Hernandez argues that the deportation of the ten illegal aliens violated his due process rights because the deported aliens plausibly could have testified that Sierra-Hernandez was not involved in bringing them into the United States or in transporting them within the United States.

<u>Valenzuela-Bernal</u> established the test for determining whether or not deportation of potential witnesses violates the defendant's due process rights. In that case, the Supreme Court stated that in order to show a due process violation the defendant must make "a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available

3

witnesses." United States v. Valenzuela-Bernal, 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982).  In addition, the Court stated that due process has been violated "only if there is a reasonable likelihood that the testimony could have affected the trier of fact" and recommended that that evaluation be done "in the context of the entire record."  Id. at 874 & 874 n.10.

Although the Fifth Circuit has never squarely addressed[2] the meaning of this test, many other circuits have.  Courts have uniformly rejected Valenzuela-Bernal-based claims of due process violations.  See United States v. Pedraza, 27 F.3d 1515 (10th Cir. 1994); United States v. Ramirez-Jiminez, 967 F.2d 1321 (9th Cir. 1992); United States v. Dring, 930 F.2d 687 (9th Cir. 1991); United States v. Nesbitt, 852 F.2d 1502 (7th Cir. 1988); United States v. Guzman, 852 F.2d 1117 (9th Cir. 1988); United States v. Morales-Quinones, 812 F.2d 604 (10th Cir. 1987); United States v. Ginsberg, 758 F.2d 823 (2d Cir. 1985); United States v. Saintil, 753 F.2d 984 (11th Cir. 1985).  Furthermore, courts have strictly evaluated Valenzuela-Bernal's requirements.[3]  See, e.g., Nesbitt, 852 F.2d at 1519 ("the strict standard of materiality set forth in Valenzuela-Bernal"); Ginsberg, 758 F.2d at 831 (stating that positing the

_____

[2]   The Fifth Circuit came closest to addressing this issue in United States v. Soape, 169 F.3d 257 (5th Cir. 1999), in which, citing Valenzuela-Bernal, it held that a district court's denial of a defendant's subpoena requests did not violate his Sixth Amendment right to due process because the defendant had not met his duty of demonstrating the necessity of the witness's testimony. See Soape, 169 F.3d at 267-69.

[3]   The Ninth Circuit has gone even further, interpreting Supreme Court precedent as requiring that the defendant also show bad faith by the prosecution.  See Dring, 930 F.2d at 693.

4

testimony most favorable to defendant that the deported witnesses could provide does not satisfy the <u>Valenzuela-Bernal</u> test).

In this case, appellant has not plausibly demonstrated that the deported aliens would have provided testimony that was both material and favorable and reasonably likely to influence the trier of fact or that the government did not act in good faith. First, the defendant's assertion that the deported aliens would testify that he was not hired to take them across the border is immaterial to whether he transported illegal aliens. At most, defendant could argue that such testimony tends to prove that he did not know those he was transporting were illegal aliens. Second, the circumstances of the pick-up – the twelve aliens running out from behind a bush in South Texas – renders such a defense weak at best. Third, defendant's appellate counsel conceded at oral argument that the government acted in good faith when it deported the aliens. The district court was therefore correct in denying the defendant's motion to dismiss the indictment.

2. EQUAL PROTECTION

Appellant also asserts that the fact that the Houston Division of the Southern District of Texas holds all illegal aliens for seven days to allow the defense a chance to interview them, while the Brownsville Division does not, constitutes a denial of his right to equal protection. He asserts that this Court should apply strict scrutiny because the practices in question impinge on a fundamental right. Because appellant has provided no evidence

that the two Divisions in fact have different procedures, this court declines to review his equal protection claim.

**AFFIRMED.**