IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 99-50918

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN MANUEL LOPEZ-VASQUEZ, also known as
Carlos Gonzalez-Gonzalez,

Defendant-Appellant.

———————————

Appeal from the United States District Court for the
Western District of Texas

———————————

August 16, 2000

Before GARWOOD, DeMOSS, and PARKER, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Juan Manuel Lopez-Vasquez (Lopez-Vasquez) appeals his conviction of one count of illegally reentering the United States without having obtained the Attorney General's consent, in violation of 8 U.S.C. § 1326. He challenges the denial of his motion to dismiss the indictment or to suppress the evidence of his previous removal from the United States. Concluding that the district court properly denied Lopez-Vasquez's motion, we affirm.

**Facts and Proceedings Below**

On June 6, 1998, Lopez-Vasquez attempted to cross the border from

Mexico into the United States at the Paso del Norte Port of Entry in El Paso, Texas, by declaring himself to be a United States citizen. When he was unable to supply proof of United States citizenship, Lopez-Vasquez was referred to a secondary inspection area for further interview. There, Lopez-Vasquez admitted to the Immigration and Naturalization Service (INS) inspectors that he was not a United States citizen, but rather, a Mexican citizen. The INS inspectors determined Lopez-Vasquez to be ineligible for admission into the United States and, pursuant to 8 U.S.C. § 1225(b)(1)(A)(i)[1], placed him in "expedited removal proceedings" and ordered him removed[2]

---

[1] Because the removal proceedings against Lopez-Vasquez commenced in June 1998, the permanent provisions of the Illegal Immigration and Reform and Immigrant Responsibility Act of 1996 (IIRIRA) were in effect, including IIRIRA § 302(b)(1)(A)(i), now codified at 8 U.S.C. § 1225(b)(1)(A)(i). *See Lopez-Elias v. Reno*, 209 F.3d 788, 790 n.1 (5th Cir. 2000) (stating that proceedings commenced after April 1, 1997 are governed by IIRIRA's permanent provisions) (citations omitted). Under § 1225(b)(1)(A)(i), if an INS inspector determines during secondary inspection that an alien who is seeking entry into the United States at a port of entry is inadmissible because the alien has made a false claim of United States citizenship, *see* 8 U.S.C. § 1182(a)(6)(C)(ii), the inspector "shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. §] 1158 . . . or a fear of prosecution." 8 U.S.C. § 1225(b)(1)(A)(i). During his secondary inspection, Lopez-Vasquez declared in a sworn statement that he had no fear of returning to Mexico and did not seek asylum.

[2] Before IIRIRA's enactment in 1996, individuals such as Lopez-Vasquez who were ineligible for admission into the United States and were never admitted into the United States were referred to as "excludable," while aliens who had gained admission, but later became subject to expulsion from the United States, were referred to as "deportable." *See* 8 U.S.C. §§ 1182, 1251 (1994); *see also Landon v. Plasencia*, 103 S.Ct. 321, 325 (1982) ("The deportation hearing is the usual means of proceeding against an alien already physically in the United States, and the exclusion hearing is the usual means of

from the United States that day. Accordingly, Lopez-Vasquez was never admitted into the United States. Before Lopez-Vasquez's departure from the secondary inspection area, the INS inspectors provided him with a form stating that: (1) he was ineligible for admission to the United States because he had made a false claim of United States citizenship; (2) he was prohibited from reentering or attempting to reenter the United States for a period of five years without first obtaining the consent of the Attorney General to reapply for admission; and (3) 8 U.S.C. § 1326 makes it a crime punishable by a fine and/or imprisonment for a period of up to twenty years for him to enter, attempt to enter, or be found in the United States without such consent.

On December 13, 1998, Lopez-Vasquez was found in El Paso, Texas by United States Border Patrol agents. The agents arrested Lopez-Vasquez when he could not provide documentation authorizing him to be present in the United States. It was later discovered that Lopez-Vasquez had previously been ordered removed from the

proceeding against an alien outside the United States seeking admission."). Excludable aliens are now referred to as "inadmissible." *See* 8 U.S.C. § 1182. As many of the cases we discuss in resolving this appeal were decided before 1996, we will use the terms "inadmissible" and "excludable" interchangeably. In addition, IIRIRA has "'d[one] away with the previous legal distinction among deportation, removal, and exclusion proceedings.'" *United States v. Pena-Renovato*, 168 F.3d 163, 164 (5th Cir. 1999) (quoting *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998), *cert. denied*, 119 S.Ct. 835 (1999)); *see* IIRIRA § 304 (codified at 8 U.S.C. §§ 1229-1229c). Now, the term "removal proceedings" refers to proceedings applicable to both inadmissible and deportable aliens. *See* 8 U.S.C. § 1229a(e)(2).

3

United States and had not received the Attorney General's consent to reenter the United States, and he was indicted for illegally reentering the United States, in violation of 8 U.S.C. § 1326. Before trial, Lopez-Vasquez moved to dismiss the indictment or to suppress evidence of his June 1998 removal, based on his assertion that, because the procedures used to remove him violated due process and were not subject to judicial review, his June 1998 removal order may not be used as evidence against him in his criminal prosecution for illegal reentry. In addition, Lopez-Vasquez contended that if he had been afforded due process, he could have avoided removal because he would have been informed that he could have applied for voluntary departure under 8 U.S.C. § 1229c[3] or withdrawn his application for admission under 8 U.S.C. § 1225(a)(4)[4]. Lopez-Vasquez, however, never challenged the INS's having found him inadmissible for having falsely claimed to be a United States citizen in attempting to enter the United States on June 6, 1998.

---

[3] 8 U.S.C. § 1229c(a) states as follows:
"The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title."

[4] 8 U.S.C. § 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."

The district court denied Lopez-Vasquez's motion to dismiss or to suppress, noting that in order to successfully challenge the use of his June 1998 removal order in his illegal reentry prosecution, Lopez-Vasquez must establish that his removal was not subject to judicial review and was fundamentally unfair causing him prejudice. In denying Lopez-Vasquez's motion, the district court focused on Lopez-Vasquez's failure to prove prejudice. With regard to Lopez-Vasquez's claim that he could have applied for voluntary departure, the district court found it to be without merit because the Government had established that such relief is discretionary and that Lopez-Vasquez would not have been allowed to depart voluntarily because he had previously been granted a voluntary departure on March 29, 1997. *See* 8 U.S.C. § 1229c(c)[5]. As to Lopez-Vasquez's assertion that he could have withdrawn his application for admission, thereby avoiding removal, the district court held that this relief was also purely discretionary and that, under current INS policies, Lopez-Vasquez would not have been granted such relief because he had previously been convicted of a criminal offense–unauthorized use of a vehicle[6]. Based on these

---

[5] 8 U.S.C. § 1229c(c) states that "[t]he Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible under section 1182(a)(6)(A) of this title."

[6] On November 6, 1997, Lopez-Vasquez pleaded guilty in Texas state court to the offense of unauthorized use of a vehicle and was sentenced to two years' community supervision. Texas law describes unauthorized use a vehicle as follows:

5

conclusions, the district court determined that because Lopez-Vasquez could not establish any prejudice that resulted from the procedures used to remove him, he could not show that his removal was fundamentally unfair. Therefore, the district court ruled that Lopez-Vasquez's June 1998 removal order could serve as an element of his prosecution for illegal reentry under 8 U.S.C. § 1326.

Lopez-Vasquez then moved for reconsideration of the denial of his motion, asserting that the case law did not require him to prove that he *probably* suffered prejudice, instead claiming only a *showing* of prejudice was necessary. He also contended that in June 1998 he was entitled to a future visa based on his having an immediate relative, his father, who was a lawful permanent resident of the United States[7], and therefore would not have been removed if the removal procedures were not so lacking in procedural fairness. Moreover, he maintained that his prior conviction for unauthorized use of a vehicle was not an aggravated felony or a crime of violence and thus did not disqualify him from either withdrawing his application for admission or receiving relief based on his

---

"(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.
(b) An offense under this section is a state jail felony." TEXAS PENAL CODE § 31.07

[7] Curiously, in his June 6, 1998 sworn statement to an INS inspector, Lopez-Vasquez declared that neither of his parents had ever legally immigrated to the United States. Nor did Lopez-Vasquez inform the INS inspector that he was entitled to a visa or had a pending visa application.

6

entitlement to a visa.  In response, the Government stated that Lopez-Vasquez was not eligible for a visa and, even if he had obtained one, his status as an aggravated felon, based on his conviction of unauthorized use of a vehicle[8], would have precluded his entry under it.  The district court carried Lopez-Vasquez's motion for reconsideration to trial.

Lopez-Vasquez waived his right to a jury trial and stipulated to the following facts: (1) he was an alien; (2) he was removed from the United States in an INS administrative proceeding on June 6, 1998; (3) he was found in the United States on or about December 13, 1998; and (4) he had not received the Attorney General's consent to reapply for admission into the United States since his June 1998 removal and prior to his having been found in the United States on or about December 13, 1998.  After a bench trial, the district court denied Lopez-Vasquez's motion for reconsideration of his motion to dismiss and/or to suppress and found him guilty of the offense of illegal reentry.  The district court sentenced Lopez-Vasquez to ten months' imprisonment and two years' non-reporting supervised release.  Lopez-Vasquez timely appealed to

---

[8] This Court has held that "the unauthorized use of motor vehicle . . . qualifies as a crime of violence under 18 U.S.C. § 16" and as an aggravated felony for purposes of sentencing under U.S.S.G. § 2L.1.2. *United States v. Galvan-Rodriguez*, 169 F.3d 217, 220 (5th Cir. 1999) (*per curiam*). Moreover, for an offense to be considered an aggravated felony, it must be punishable by a sentence of at least one year.  We held that Galvan-Rodriguez's five-year deferred adjudication sentence satisfied this requirement.  *See id*. at 219-20 & n.4.

7

this Court.

## Discussion

Lopez-Vasquez contends that the district court erred in denying his motion to dismiss or to suppress. Lopez-Vasquez asserts that the removal procedures did not provide for judicial review of his removal and, in fact, 8 U.S.C. § 1225(b)(1)(D)[9] strips the district court and this Court of jurisdiction to consider whether his removal violated due process and caused him prejudice. Lopez-Vasquez argues that this complete lack of judicial review makes it unconstitutional to permit his June 1998 removal to be used as an element of his instant conviction for violating 8 U.S.C. § 1326[10]. We review Lopez-Vasquez's

---

[9] 8 U.S.C. § 1225(b)(1)(D) provides:
"In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)."

[10] 8 U.S.C. § 1326 states:
"(a) Subject to subsection (b) of this section, any alien who–
    (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
    (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than

8

2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection–

(1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;

(3) who has been excluded from the United States pursuant to section 1225(c) of this title because the alien was excludable under section 1182(a)(3)(B) of this title or who has been removed from the United States pursuant to the provisions of subchapter V of this chapter, and who thereafter, without the permission of the Attorney General, enters the United States, or attempts to do so, shall be fined under Title 18 and imprisoned for a period of 10 years, which sentence shall not run concurrently with any other sentence[;] or

(4) who was removed from the United States pursuant to section 1231(a)(4)(B) of this title who thereafter, without the permission of the Attorney General, enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be fined under Title 18, imprisoned for not more than 10 years, or both.

For the purposes of this subsection, the term 'removal' includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under either Federal or State law.

(c) Any alien deported pursuant to section 1252(h)(2) of this title who enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be incarcerated for the remainder of the sentence of imprisonment which was pending at the time of deportation without any reduction for parole or supervised release. Such alien shall be subject to such other penalties relating to the reentry of deported aliens as may be available under this section or any other provision of law.

(d) In a criminal proceeding under this section, an

constitutional challenge *de novo*.  *See United States v. Sierra-Hernandez*, 192 F.3d 501, 503 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1213 (2000).[11]

Lopez-Vasquez's argument principally relies on the Supreme Court's decision in *United States v. Mendoza-Lopez*, 107 S.Ct. 2148 (1987).  In *Mendoza-Lopez*, the Court considered the use of deportation orders in the criminal prosecution of two aliens for illegal reentry, in violation of 8 U.S.C. § 1326.  *See id*. at 2150-51.  Before the district court, the

> alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that–
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial reviews and
> (3) the entry of the order was fundamentally unfair."

[11]  The Government contends that we should review the district court's denial of Lopez-Vasquez's motion to dismiss for plain error only, because Lopez-Vasquez did not raise the contention he now urges in the court below.  Despite conceding that he did not cite to the district court the statute, 8 U.S.C. § 1225(b)(1)(D), Lopez-Vasquez now claims that it stripped the district court of jurisdiction to review his removal and that our consideration of this issue is not limited to plain error.  Determining the appropriate standard of review is further complicated by the fact that Lopez-Vasquez's argument implicates the jurisdiction of the federal courts–an issue that "cannot be waived and can be raised at any time." *Barnes v. Levitt*, 118 F.3d 404, 410 (5th Cir. 1997); *see Ruhrgas AG v. Marathon Oil Co.*, 119 S.Ct. 1563, 1570 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); 5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1393 (2d ed. 1990 & Supp. 2000). Because we conclude that the district court's denial of Lopez-Vasquez's motion was correct under either standard of review, we decline to choose between them. We therefore assume, without deciding, that Lopez-Vasquez adequately preserved this ground of error for appellate review.

10

defendants moved to dismiss the indictment against them on the basis that their deportation hearing[12] was rendered fundamentally unfair by the immigration judge's inadequately informing them of their right to counsel at the hearing and accepting their unknowing waivers of their right to apply for suspension of deportation. *See id*. at 2151. The district court agreed and dismissed the indictments, concluding that their lack of understanding of their rights to apply for suspension of deportation or their rights to appeal their deportation orders rendered their deportation proceeding fundamentally unfair. *See id*. at 2152. The Court of Appeals affirmed, determining first that a defendant prosecuted under section 1326 could collaterally attack a deportation order and second that these defendants' deportation hearings were fundamentally unfair and, thus, the resulting deportation orders could not form the basis of the section 1326 charges against them. *See id*.

The Government sought review by the Supreme Court, arguing that a collateral attack of an underlying deportation order was neither authorized in a section 1326 prosecution nor required under the Constitution for the order to serve as an element of a section 1326 prosecution and conviction for illegal reentry. In doing so, the Government did not challenge the lower courts' findings "that the deportation proceeding in th[e] case was fundamentally unfair and that

---

[12] The two defendants, along with eleven other persons, were deported in the same proceeding.

11

the deportation order was therefore unlawful." *Id*. at 2153 n.8; *see id*. at 2156 ("The United States has asked this Court to assume that [defendants'] deportation hearing was fundamentally unfair in considering whether collateral attack on the hearing may be permitted. We consequently accept the legal conclusions of the court below that the deportation hearing violated due process.") (internal citation omitted). With regard to the Government's contention that the underlying deportation order and proceeding were not subject to collateral attack in a section 1326 prosecution, the Court agreed. *See id*. at 2154 ("Congress did not intend the validity of the deportation order to be contestable in a § 1326 prosecution . . ..."). However, the Court also concluded that, in the absence of effective judicial review, the deportation proceeding and order, which suffered from fundamental unfairness, "may not be used to support a criminal conviction." *Id*. at 2157. Accordingly, the Court affirmed the dismissal of the indictments.

This Court, interpreting *Mendoza-Lopez*, has formulated three distinct but related requirements that must be met by an alien wishing to challenge the use of a deportation order, or in this case a removal order, in a prosecution for illegal reentry under 8 U.S.C. § 1326: (1) the alien must establish that the hearing was "fundamentally unfair"; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused him actual prejudice. *See United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999); *United*

12

*States v. Asibor*, 109 F.3d 1023, 1038 (5th Cir. 1997); *United States v. Estada-Trochez*, 66 F.3d 733, 735 (5th Cir. 1995); *United States v. Encarnacion-Galvez*, 964 F.2d 402, 406 (5th Cir. 1992); *United States v. Palacios-Martinez*, 845 F.2d 89, 91 (5th Cir. 1988).[13] We first consider whether the procedures employed in Lopez-Vasquez's removal were "fundamentally unfair."

Our decisions considering a collateral attack on an order used an element of an illegal reentry prosecution have involved deportation orders as the predicate element of a section 1326 prosecution. *See, e.g., Benitez-Villafuerte*, 186 F.3d at 654-55; *Estada-Trochez*, 66 F.3d at 734-35; *Encarnacion-Galvez*, 964 F.2d at 404-05. Although the Supreme

---

[13] The majority of our sister circuits agree with our interpretation of *Lopez-Mendoza*. *See, e.g., United States v. Lara-Aceves*, 183 F.3d 1007, 1010 (9th Cir. 1999); *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998); *United States v. Parades-Batista*, 140 F.3d 367, 378 (2d Cir.), *cert. denied*, 119 S.Ct. 143 (1998); *United States v. Loaisiga*, 104 F.3d 484, 487 (1st Cir. 1997); *United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995); *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994); *Figeroa v. U.S. INS*, 886 F.2d 76, 78 (4th Cir. 1989); *United States v. Holland*, 876 F.2d 1533, 1537 (11th Cir. 1989).

With AEDPA's enactment in 1996, Congress effectively codified this reading of *Mendoza-Lopez* in 8 U.S.C. § 1326(d), which provides:
> "In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that—
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair."

Court has not enumerated the procedural protections guaranteed to an alien in a deportation proceeding, *see Mendoza-Lopez*, 107 S.Ct. at 2155 n.17, it is well-settled that "aliens in deportation proceedings are to be 'accorded due process.'" *Lara-Aceves*, 183 F.3d at 1011 (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)); *see Shaughnessy v. United States ex rel. Mezei*, 73 S.Ct. 625, 629 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *Benitez-Villafuerte*, 186 F.3d at 656 ("Aliens who have entered the United States unlawfully are assured the protection of the Fifth Amendment due process clause.") (citations omitted). However, "an alien on the threshold of initial entry stands on a different footing." *Mezei*, 73 S.Ct. at 629. In attempting to enter the United States on June 6, 1998, Lopez-Vasquez was never admitted into the United States; instead, the INS inspectors prevented him from doing so at the border and later founnd him inadmissible or excludable. In determining whether Lopez-Vasquez's removal procedures violated due process, we must first address what process is due an alien seeking admission into the United States who has not gained entry into the United States and remains subject to being found inadmissible.

An alien "seek[ing] admission to this country may not do so under any claim of right." *United States ex rel. Knauff v. Shaughnessy*, 70 S.Ct. 309, 312 (1950); *see Kleindeinst v. Mandel*, 92 S.Ct. 2576, 2581 (1972) ("[A]n unadmitted and nonresident alien[] ha[s] no constitutional

14

right of entry to this country as a nonimmigrant or otherwise.")
(citations omitted). "An attempt to enter this country is a request for
a privilege rather than an assertion of right." *Zadvydas v. Underdown*,
185 F.3d 279, 294 (5th Cir. 1999), *petition for cert. filed*, No. 99-7791
(Jan. 11, 2000) (citing *Landon*, 103 S.Ct. at 328).  In the exclusion or
inadmissibility context, only the process afforded by the Congress and
the Executive is required.  *See id*. at 294-95; *see also Landon*, 103
S.Ct. at 329 ("This Court has long held that an alien seeking initial
admission to the United States requests a privilege and has no
constitutional rights regarding his application, for the power to admit
or exclude aliens is a sovereign prerogative."); *Kleindienst*, 92 S.Ct.
at 2585 ("[P]lenary congressional power to make policies and rules for
exclusion of aliens has long been firmly established."); *Boutilier v.
INS*, 87 S.Ct. 1563, 1567 (1967) ("It has long been held that the
Congress has plenary power to make rules for the admission of aliens and
to exclude those who possess those characteristics which Congress has
forbidden.") (citation omitted); *Knauff*, 70 S.Ct. at 313 ("Whatever the
procedure authorized by Congress is, it is due process as far as an
alien denied entry is concerned.") (citations omitted); *Ekiu v. United
States*, 12 S.Ct. 336, 339 (1892) ("As to such persons, the decisions of
executive or administrative officers, acting within powers expressly
conferred by congress, are due process of law.") (citations omitted);
*Hernandez v. Cremer*, 913 F.2d 230, 236 (5th Cir. 1990) ("The Supreme
Court has long recognized that the political branches of government have

15

plenary authority to make rules for the admission and exclusion of aliens as an inherent concomitant of national sovereignty.") (citations omitted); *cf. Doe v. Plyler*, 628 F.2d 448, 455 n.17 (5th Cir. 1980), *aff'd*, 102 S.Ct. 2382 (1982) ("Aliens who seek entry to the United States are not guaranteed Fourteenth Amendment due process rights."). On June 6, 1998, the INS inspectors found Lopez-Vasquez to be inadmissible, or excludable under the pre-IIRIRA terminology. Accordingly, he did not enter into the United States on that occasion. *See Gisbert v. U.S. Attorney General*, 988 F.2d 1437, 1440 (5th Cir. 1993) ("Although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.") (citations omitted). Therefore, in his removal, Lopez-Vasquez was entitled only to the process provided by Congress.[14]

On June 6, 1998, Lopez-Vasquez was placed in expedited removal

---

[14] In *Landon*, the Court considered what process is due a permanent resident alien seeking admission to the United States following a two-day visit abroad. *See Landon*, 103 S.Ct. at 324. Although the Court rejected Plasencia's argument that she was entitled to a deportation hearing, the Court also determined that, even though she was an alien seeking admission into the United States, she was entitled to due process, because of her having previously gained admission into the United States, maintained residency in the country for five years, and "develop[ed] the ties that go with permanent residence . . .." *Id*. at 329. Moreover, the United States conceded that Plasencia "ha[d] a right to due process." *Id*. at 330 (citations omitted). In the present case, the Government does not make such a concession and argues that Lopez-Vasquez is due only the process provided under the immigration statutes and regulations. In addition, Lopez-Vasquez does not contend, nor does the record suggest, that his status is analogous to Plasencia's.

16

proceedings for attempting to enter the United States by falsely declaring himself to be a United States citizen. *See* 8 U.S.C. § 1225(b)(1)(A)(i)[15]. Federal regulations exist that set forth explicitly the procedures for the expedited removal of inadmissible aliens. *See* 8 C.F.R. § 235.3. Lopez-Vasquez does not contend that these procedures were not followed. Therefore, we hold that Lopez-Vasquez was not denied procedural due process and that his removal was not fundamentally unfair.

Because Lopez-Vasquez's removal proceedings did not violate due process, we need not address whether he suffered any prejudice[16] or

---

[15]   8 U.S.C. § 1225(b)(1)(A)(i) provides as follows:
    "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution."

[16]   "A showing of prejudice means 'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported' [or removed]." *Benitez-Villafuerte*, 186 F.3d at 658-59 (quoting *Estrada-Trochez*, 66 F.3d at 735). "In short, '[i]f the defendant was legally deportable and, despite the INS's errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326.'" *Id*. (quoting *United States v. Galicia-Gonzalez*, 997 F.2d 602, 603 (9th Cir. 1993)) (internal quotation omitted and alteration in original). Although we need not and do not address this element, we note that, on appeal, Lopez-Vasquez does not contest the district court's finding that, even if his removal order violated his due process rights, he suffered no prejudice and could not have avoided removal on June 6, 1998.

17

whether he was denied judicial review of the hearing and order[17]. *See*

*Encarnacion-Galvez*, 964 F.2d at 406 (stating that, if the alien fails

to establish one element of his challenge, a court need not consider the

others) (citing *Palacios-Martinez*, 845 F.2d at 92; *United States v.*

*Saucedo-Velasquez*, 843 F.2d 832, 836 & n.6 (5th Cir. 1988)).[18] Because

---

[17] Lopez-Vasquez maintains that 8 U.S.C. § 1225(b)(1)(D) precludes judicial review of the INS inspector's finding that Lopez-Vasquez claimed to be a United States citizen when he attempted to enter the United States on June 6, 1998. Lopez-Vasquez raises an interesting issue, particularly in light of the provision for judicial review of removal orders issued under 8 U.S.C. § 1225(b)(1), *see* 8 U.S.C. § 1252(e), and the opportunity for a collateral attack of an underlying *deportation* order in a section 1326 prosecution, *see* 8 U.S.C. § 1326(d). Moreover, Lopez-Vasquez's argument implicates *Mendoza-Lopez*'s requirement that an alien be allowed to collateral attack a fundamentally unfair removal proceeding and order irrespective of the lack of a statutory mechanism to permit judicial review in a § 1326 prosecution. *See Mendoza-Lopez*, 107 S.Ct. at 2156 ("[A] collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review."). Because Lopez-Vasquez fails to establish that the procedures used to deport him violated due process, we need not and do not decide what judicial review, if any, is available to consider challenges to an expedited removal order that is used as an element of a § 1326 prosecution.

[18] We reached an analogous conclusion, albeit in a different context–a 28 U.S.C. § 2241 habeas corpus petition challenging the use of a prior deportation order in a later deportation proceeding. *Lara v. Trominski*, ___ F.3d ____, No. 98-41434 (5th Cir. July 10, 2000). After having been deported from the United States in February 1993 (after convicted of conspiracy to make a machine gun), Lara reentered the United States and was charged with unlawful reentry after deportation, in violation of 8 U.S.C. § 1326. After serving a fifteen-month term of imprisonment, the INS instituted deportation proceedings against Lara. In these proceedings, Lara attempted to collaterally attack his February 1993 deportation, asserting that the offense leading to his deportation, conspiracy to make a machine gun, was not a ground for deportation. The IJ ruled that it lacked jurisdiction to consider Lara's collateral challenge. The BIA found that it lacked jurisdiction because Lara could not establish that his prior deportation

18

he cannot show that his removal proceeding was fundamentally unfair, Lopez-Vasquez's June 1998 removal order may permissibly serve as a basis for his conviction under 8 U.S.C. § 1326. Therefore, the district court did not err in denying Lopez-Vasquez's motion to dismiss the indictment or to suppress.

**Conclusion**

For the reasons stated, the judgment of the district court is AFFIRMED.

---

was a gross miscarriage of justice. Although Lara did not file a petition for review of the BIA's decision, he did file a § 2241 petition in federal district court, which granted Lara's petition. We reversed the grant of habeas relief and ordered Lara's petition to be dismissed, concluding that, because the BIA did not err in finding Lara had not established that his prior deportation involved a gross miscarriage of justice, the district court lacked jurisdiction to consider Lara's § 2241 petition. Our resolution of Lopez-Vazquez's contentions is similar: because he cannot establish that his June 1998 removal was fundamentally unfair and violated due process, he cannot sustain a collateral attack on its use in his instant § 1326 prosecution and conviction for illegal reentry.