**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ALVARO SANCHEZ-AGUILAR, *Defendant-Appellant*. | No. 12-30046 D.C. No. 2:11-cr-02074-RHW-1 |

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ALVARO SANCHEZ-AGUILAR, *Defendant-Appellant*. | No. 12-30049 D.C. No. 2:09-cr-02057-RHW-1 OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, Senior District Judge, Presiding

Argued and Submitted
December 7, 2012—Seattle, Washington

Filed June 19, 2013

Before: Richard C. Tallman and Paul J. Watford, Circuit Judges, and Michael W. Fitzgerald, District Judge.[*]

Opinion by Judge Watford;
Dissent by Judge Fitzgerald

## SUMMARY[**]

### Criminal Law

The panel affirmed an illegal reentry conviction under 8 U.S.C. § 1326 in the case of a defendant who had already been convicted, in 2009, of violating § 1326 based on the same 2006 removal order that formed the predicate for the conviction in this case.

The panel held that proof of the defendant's post-2009 departure from the United States, although necessary to avoid double jeopardy concerns, was not an element of the § 1326 offense submitted to the jury. The panel therefore rejected the defendant's contention that the government's failure to prove at trial that the defendant left the United States after his 2009 conviction means there was insufficient evidence to support the conviction. Because it was undisputed in the district court or on appeal that the defendant left the United States after his 2009 conviction, the panel held that there was

[*] The Honorable Michael W. Fitzgerald, United States District Judge for the Central District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

no error, much less plain error, in the district court's refusal to vacate the defendant's conviction based on a double jeopardy defense. The panel rejected the defendant's contention that, in analyzing his double jeopardy defense, this court is limited to reviewing the evidence presented to the jury.

Rejecting the defendant's collateral attack on the validity of the 2006 removal order, the panel held that the failure of the immigration officer who interviewed the defendant at the border to inform him of his ability to request withdrawal of his application of admission did not violate his due process rights. The panel explained that non-admitted aliens like the defendant who seek entry at the border are entitled only to whatever process Congress provides, and the right to be informed of potentially available avenues of relief from removal is not among the procedural rights to which such aliens are entitled under the statute and regulation governing expedited removal proceedings.

Dissenting, District Judge Fitzgerald would reverse and remand with instructions for entry of judgment of acquittal based on insufficiency of the evidence because he reads *United States v. Meza-Villarello*, 602 F.2d 209 (9th Cir. 1979) (per curiam), as requiring the government to prove to the jury beyond a reasonable doubt that the defendant has been outside the United States since the prior § 1326 conviction.

**COUNSEL**

Rebecca L. Pennell (argued), Federal Defenders of Eastern Washington & Idaho, Yakima, Washington, for Defendant-Appellant.

Alison L. Gregoire (argued), Assistant United States Attorney; Michael C. Ormsby, United States Attorney, Yakima, Washington, for Plaintiff-Appellee.

**OPINION**

WATFORD, Circuit Judge:

Alvaro Sanchez-Aguilar is a citizen of Mexico who initially came to the United States as a child with his mother. Although many of his immediate family members lawfully reside in the United States, he does not, and the federal government has formally removed him to Mexico on five occasions. Following his last removal, in 2010, he returned to the United States without first obtaining permission to do so, as required by law.

In May 2011, the government charged him with being an alien who, after having been removed in 1998, 2005, 2006, 2007, and 2010, was "found in" the United States in violation of 8 U.S.C. § 1326. A jury convicted Sanchez-Aguilar of that offense, and the district court sentenced him to the applicable statutory maximum of two years in prison.

Sanchez-Aguilar raises two challenges to his conviction. The first, which he incorrectly frames as a challenge to the

sufficiency of the evidence, requires a brief summary of the procedural history of the case.

Before trial, Sanchez-Aguilar moved to dismiss the indictment on the ground that each of his prior removal orders had been issued in violation of his due process rights. A removal order may not be used as the predicate for a § 1326 prosecution if the proceeding that produced the order "violated the alien's due process rights and the alien suffered prejudice as a result." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011) (internal quotation marks and citation omitted). The government conceded that four of Sanchez-Aguilar's removal orders were invalid under this standard. But the government argued that Sanchez-Aguilar's due process rights had not been violated in connection with the 2006 removal order, and the district court ultimately agreed. The court accordingly denied Sanchez-Aguilar's motion to dismiss the indictment, although it rejected the government's request to introduce evidence relating to the 1998, 2005, 2007, and 2010 removal orders under Federal Rule of Evidence 404(b). At trial, the jury heard evidence that Sanchez-Aguilar had been removed from the United States only in 2006.

The source of controversy on appeal is this: Sanchez-Aguilar had already been convicted, in 2009, of violating § 1326 based on the same 2006 removal order that forms the predicate for the conviction in this case. There is nothing inherently wrong with that; under the "found in" prong of § 1326, the same removal order can serve as the basis for more than one conviction, so long as the government "prove[s] that the defendant ha[s] been outside the United States after each conviction" before he is again prosecuted for violating § 1326. *United States v. Meza-Villarello*, 602 F.2d

209, 211 (9th Cir. 1979) (per curiam).  We adopted that rule, grounded in double jeopardy concerns, to avoid the specter of the government obtaining one § 1326 conviction and then, after releasing the defendant from prison, arresting him at the prison gates for again being "found in" the United States.  *Id.*

In this case, the government did not prove at trial that Sanchez-Aguilar had been outside the United States between his 2009 conviction and his arrest for the offense at issue here.  But in fact he had been.  It is undisputed that, upon completing his sentence for the 2009 conviction, Sanchez-Aguilar was immediately removed to Mexico on September 3, 2010.  The jury never learned of that fact because the district court excluded any evidence relating to the 2010 removal order.

The question we must resolve is whether the government's failure to prove at trial that Sanchez-Aguilar left the United States after his 2009 conviction is of any significance.  Sanchez-Aguilar contends the government's failure to prove that fact means there was insufficient evidence to support his conviction in this case. We view the matter differently.  Proof of Sanchez-Aguilar's post-2009 departure from the United States, although necessary to avoid double jeopardy concerns, was not an element of the § 1326 offense submitted to the jury.  *See United States v. Florez*, 447 F.3d 145, 150 (2d Cir. 2006) (proof of flight from justice necessary to avoid statute-of-limitations dismissal "did not thereby become an element of the charged narcotics offenses").  To obtain a conviction, the government needed to prove only that Sanchez-Aguilar had been removed from the United States in 2006, and that at some point thereafter he knowingly and voluntarily returned to the United States without first obtaining the requisite permission to do so.  *See*

*United States v. Romo-Romo*, 246 F.3d 1272, 1276 (9th Cir. 2001). The government introduced ample proof of those statutory elements at trial, and Sanchez-Aguilar does not contend otherwise. Thus, the government introduced sufficient evidence to sustain his conviction.

That leaves the question whether Sanchez-Aguilar's conviction violates his right not to "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Since Sanchez-Aguilar never raised a double jeopardy defense in the district court, we review the record only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732 (1993). We find none. Under *Meza-Villarello*, in order to ensure that his conviction in this case is for a different § 1326 "offence," the government had to show that Sanchez-Aguilar left the United States after his 2009 conviction. 602 F.2d at 211. But that fact was undisputed below and is not disputed on appeal. Indeed, in a pre-trial brief, Sanchez-Aguilar conceded that he had been removed from the United States in September 2010. So there was no error, much less plain error, in the district court's refusal to vacate Sanchez-Aguilar's conviction based on a double jeopardy defense he never raised.

We reject Sanchez-Aguilar's contention that, in analyzing his double jeopardy defense, we are limited to reviewing the evidence presented to the jury. That contention cannot be squared with precedent holding that double jeopardy is a question of law that must be resolved by the court, not the jury, even when the defense turns on disputed factual issues. *See United States v. Persico*, 832 F.2d 705, 712 (2d Cir. 1987); *United States v. MacDougall*, 790 F.2d 1135, 1142–43 (4th Cir. 1986). When the defense must be addressed after trial and turns on disputed facts, district courts are

empowered to hold post-trial evidentiary hearings to make the necessary factual determinations.  *See Persico*, 832 F.2d at 712; *United States v. Young*, 503 F.2d 1072, 1076–77 & n.17 (3d Cir. 1974).  If courts were limited to reviewing the evidence introduced at trial, as Sanchez-Aguilar urges, post-trial evidentiary hearings to address double jeopardy issues would be neither needed nor authorized.[1]

Sanchez-Aguilar's second challenge to his conviction is a collateral attack on the validity of the 2006 removal order. That attack can succeed only if Sanchez-Aguilar shows that "the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d)(3).  As alluded to earlier, this standard requires the defendant to establish both a due process violation in the underlying removal proceeding and resulting prejudice. *Barajas-Alvarado*, 655 F.3d at 1085; *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).  We need not analyze prejudice because Sanchez-Aguilar has not established a due process violation.

---

[1] In *Meza-Villarello*, we noted that no double jeopardy concerns were raised because "the government's evidence was sufficient to permit the jury to find" that the defendant had left the United States after his prior § 1326 conviction.  602 F.2d at 211.  Contrary to the dissent's suggestion, we did not purport to hold that the jury was required to make that finding to sustain a valid second conviction.  Doing so would have upended settled law holding that a fact needed to establish separate offenses for double jeopardy purposes must be proved to the court.  *See United States v. Bendis*, 681 F.2d 561, 564 (9th Cir. 1981); *see also United States v. Ragins*, 840 F.2d 1184, 1192 (4th Cir. 1988).  Instead, we merely observed that, given the record at trial (which included evidence of the prior conviction and undisputed evidence of a post-conviction departure), the jury actually convicted the defendant of a distinct second offense, and thus there could be no conceivable double jeopardy violation.

Sanchez-Aguilar contends that his due process rights were violated because the immigration officer who interviewed him at the border did not tell him that he could request withdrawal of his application for admission, a form of discretionary relief which, if granted, would have allowed Sanchez-Aguilar to leave the United States immediately without a removal order being entered. *See* 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 235.4. In the context of removal proceedings for aliens who have already been admitted into the United States, we have held that due process requires the immigration judge to inform such aliens of potentially available avenues of relief. *See United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998). But Sanchez-Aguilar's 2006 removal order was the product of an expedited removal proceeding authorized under 8 U.S.C. § 1225(b)(1). Such proceedings are generally reserved for "arriving aliens" who, like Sanchez-Aguilar at the time, are seeking admission into the United States at the border. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(1)(i).

Non-admitted aliens like Sanchez-Aguilar who seek entry at the border "are entitled only to whatever process Congress provides." *Barajas-Alvarado*, 655 F.3d at 1088; *see United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). The statute and regulation governing expedited removal proceedings, 8 U.S.C. § 1225(b)(1) and 8 C.F.R. § 235.3, set forth the procedural rights to which such aliens are entitled, but the right to be informed of potentially available avenues of relief from removal is not among them. As a result, the immigration officer's failure to inform Sanchez-Aguilar of his ability to request withdrawal of his

application for admission did not violate his due process rights. *See United States v. Lopez-Vasquez*, 227 F.3d 476, 479–80, 484–85 (5th Cir. 2000).

**AFFIRMED.**

---

FITZGERALD, District Judge, dissenting:

I respectfully dissent.

I agree with virtually all of the majority's opinion. I agree that the immigration officer's failure to inform Mr. Sanchez-Aguilar of his ability to request withdrawal of his application for admission did not violate Mr. Sanchez-Aguilar's due process rights. I agree that double jeopardy is a question of law that must be resolved by the court, not the jury, even when the defense turns on disputed factual issues. And I agree that, in this case, the government did not prove at trial that Mr. Sanchez-Aguilar had been outside the United States between his 2009 conviction and his arrest for the offense at issue here.

Where I break with the majority is in its reading of *United States v. Meza-Villarello*, 602 F.2d 209 (9th Cir. 1979) (per curiam). In that case, the defendant had been deported in 1971 and convicted of violating Section 1326 in 1975 and again in 1979; the 1979 conviction was the subject of the appeal. *Id.* at 209–10. The defendant had argued for a jury instruction "tendered upon a double-jeopardy theory," which the district court rejected. *Id.* at 210. At trial, the government established that the defendant had been deported in 1971, that he had been convicted of violating Section 1326

in 1975, and that he had been found (without permission) and arrested in the United States in 1978. *Id.* There was no proof that the defendant had been deported after the 1975 conviction. *Id.*

"The requested instruction would have told the jury that it could not return a verdict of guilty unless it found beyond a reasonable doubt that the defendant had left the United States under a 'lawful order of deportation or of voluntary departure' subsequent to his 1975 sentencing." *Id.* The defendant argued that the government "must prove a separate prior deportation for each new offense of being 'at any time found in' the United States." *Id.*

This Circuit rejected this theory, but only in part. According to the *Meza-Villarello* panel, "We do not believe Congress intended to require a separate official or formal act of deportation to precede each repeated violation of section 1326." *Id.* at 211. Stated simply, a single predicate removal can support multiple Section 1326 convictions – another point on which I agree with the majority in this case.

However, the *Meza-Villarello* panel continued, "[t]o avoid an unfair prosecution following an arrest at the prison gates, . . . the government should be required to prove that the defendant had been outside the United States after each conviction before again prosecuting him for being 'found' within the United States in violation of 8 U.S.C. § 1326." *Id.*; *see also United States v. Barraza-Lopez*, 659 F.3d 1216, 1217 n.1 (9th Cir. 2011) ("Under [*Meza-Villarello*], 'the government [is] required to prove that the defendant ha[s] been outside the United States after each conviction before again prosecuting him for being "found" within the United States in violation of 8 U.S.C. § 1326.'") (second and third

alterations in the original) (citing *Meza-Villarello*, 602 F.2d at 211)). Again, this language does not necessarily conflict with the majority's opinion here.

The *Meza-Villarello* decision then concluded that the "government's evidence was sufficient to permit ***the jury*** to find that after his 1978 arrest [the defendant] gave an address in Mexico as his 'home' and that he had admitted to officers that he had 'crossed' earlier the day he was arrested. ***On this record*** there was no error in refusing the tendered instruction." *Id.* at 211 (emphasis added).

Technically, the *Meza-Villarello* panel did not reach the double jeopardy issue: "We need not reach the double-jeopardy questions that might lurk in this case had there been no evidence of a return to Mexico followed by a renewed presence in the United States after [the defendant]'s next most recent conviction." *Id.*

In sum, I read *Meza-Villarello* as setting forth a two-part holding: In any Section 1326 prosecution that follows a prior Section 1326 conviction, (1) there need not have been a separate official or formal act of deportation following the prior Section 1326 conviction; but, (2) the government is required to prove – to the jury beyond a reasonable doubt – that the defendant has been outside the United States since the prior Section 1326 conviction.

That the requested jury instruction in *Meza-Villarello* was "tendered upon" (*i.e.*, informed by) a double jeopardy theory does not make the second prong of this rule a question of law for the court. As noted above, the panel in *Meza-Villarello* explicitly did not reach the double-jeopardy question. If it had reached that question and viewed the resolution as a

matter of law, the panel would have written that the "government's evidence was sufficient to permit" *the district court* to find that the defendant had been outside the United States after the 1975 conviction.    The decision reads otherwise.

Instead, *Meza-Villarello* is best understood as follows:  In any Section 1326 prosecution that follows a prior Section 1326 conviction, the government must prove to the jury beyond a reasonable doubt that the defendant had left the United States subsequent to the prior conviction.  While the government need not necessarily prove a subsequent deportation or removal, there must be evidence sufficient to permit the jury to find beyond a reasonable doubt that the defendant left the United States in the time period following the prior Section 1326 conviction.

My colleagues on the district court seem to agree with this interpretation of *Meza-Villarello*.  *See, e.g.*, *United States v. Perales-Flores*, No. CR-05-6049-EFS, 2006 WL 219543, at *1–2 (E.D. Wash. Jan. 27, 2006) (granting Rule 29 motion for judgment of acquittal) ("[I]n view of the absence of any evidence that Defendant . . . had been outside of the United States following his 2000 § 1326 conviction, the Court finds the Government failed to prove an essential element of the crime charged:  that Defendant had left the United States after being convicted under § 1326 in 2000.  Absent proof of Defendant's departure from the United States, there can be no new conviction for illegal reentry under § 1326.") (discussing *Meza-Villarello*, 602 F.2d at 210).

Contrary to the majority's suggestion, this reading of our prior decision is not in conflict with the precedent that double jeopardy is a question of law for the court.  Nor does it create

an additional element of the Section 1326 offense. Rather, the panel in *Meza-Villarello* simply interpreted the statutory element of Section 1326(a)(2) – specifically, that the defendant "enters, attempts to enter, or is at any time found in, the United States" – in light of the double jeopardy concerns implicated by a subsequent Section 1326 prosecution following a prior Section 1326 conviction. This is not a double jeopardy "question." It is a question of the government's burden at trial to present sufficient evidence of an element of the crime, as interpreted by this Circuit in order to avoid the double jeopardy question. *See, e.g.*, *United States v. Jinian*, 712 F.3d 1255, 1259 (9th Cir. 2013) ("We review de novo a district court's interpretation of a criminal statute and denial of a motion for judgment of acquittal." (citations omitted)); *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." (citations omitted)).

According to the majority, the panel in *Meza-Villarello* was only making reference to the fact below that the jury did hear certain evidence, without meaning to imply that the matter was necessarily for the jury. In light of the actual issue raised and decided – the propriety of a tendered jury instruction explicitly reviewed on the record of that case – the majority's reading stretches the text of *Meza-Villarello* too far. I fail to see why the prior panel would have chosen the language it did unless the issue was understood to be for the jury. Indeed, if the majority's reading were correct, then the text of *Meza-Villarello* should have been virtually

indistinguishable from the text of the majority's current opinion.

As this Circuit has recognized,

> In determining whether it is bound by an earlier decision, a court considers not merely the "reason and spirit of cases" but also "the letter of particular precedents." This includes not only the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected and the views expressed in response to any dissent or concurrence. Thus, when crafting binding authority, the precise language employed is often crucial to the contours and scope of the rule announced.

*Hart v. Massanari*, 266 F.3d 1155, 1170–71 (9th Cir. 2001) (citations omitted).

Mr. Sanchez-Aguilar's projected release date is July 14, 2013. (*See* Appellant's Opening Br. at 3). Practically, the significance of this decision is its explication of a clear rule to guide the government, defendants, and the district courts in future cases. It is now clear that a jury has no role in considering whether, in a subsequent Section 1326 prosecution, a defendant has left and returned to the United States after his prior conviction. Defense counsel must raise the issue before trial and there is no obligation to instruct the jury. The majority's rule would have avoided the precise problem that arose below: Neither party raised this issue with the district court, but the defendant can still take advantage of review for clear error. With this case as just one example, the

majority's rule might be a preferable way of dealing with the articulated concerns of fairness and double jeopardy – were we writing on the proverbial clean slate (or empty computer monitor).

Less practical but equally important are the concerns of *stare decisis*. A prior Ninth Circuit opinion is equally binding on subsequent panels and the district courts. *Hart*, 266 F.3d at 1171. As a district judge, I would never have refused a properly worded jury instruction in a subsequent Section 1326 trial that followed a prior Section 1326 conviction. In other words, I would have felt bound by the (to me) clear ruling in *Meza-Villarello*; sitting by designation now, I cannot disregard that ruling.

Accordingly, I would reverse and remand the case with instructions for entry of a judgment of acquittal, based on insufficiency of the evidence.