UNITED STATES of America,
Plaintiff,

v.

Katrina LEUNG, Defendant.

No. CR 03–434 FMC.

United States District Court,
C.D. California.

Jan. 6, 2005.

John D. Vandevelde, Janet I. Levine, Lightfoot Vandevelde Sadowsky Medvene & Levine, Los Angeles, CA, for Defendant.

Michael Emmick, AUSA—Office of US Attorney Criminal Div., Los Angeles, CA, for Plaintiff.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

COOPER, District Judge.

Defendant moves to dismiss the criminal charges against her on the grounds of prosecutorial misconduct. The Court has read and considered the parties' briefs and evidentiary submissions, together with documents submitted to the Court *in camera* in response to Defendant's subpoena.

## Procedural Background

Defendant, Katrina Leung, has been indicted and charged with crimes in connection with her activities as an asset for the FBI. Also arrested and charged, in a separate proceeding, was Special FBI Agent, James J. Smith, who had been Ms. Leung's handler. Smith and Leung and their attorneys entered into a joint defense agreement.

In May 2004, Smith entered into a plea agreement with the United States. One of the provisions in that plea agreement has generated the instant motion. Smith, who had been facing five serious felony charges, was allowed to plead to a substantially reduced single charge of making a false statement to a federal agency, and face probation, in exchange for his agreement to cooperate with the government.

## Plea Agreement

In addition to his obligation to cooperate with and assist the government, Smith agreed, at Paragraph 15(d) of the agreement, to:

Withdraw from any joint defense agreement (written or oral) relating to this case, including any such agreement with Katrina Leung, counsel for Katrina Leung, or the employees of counsel for Katrina Leung, *and to have no further sharing of information relating to this case with Leung, counsel for Leung, or the employees of counsel for Leung.* In particular, defendant, counsel for defendant, and the employees of counsel for defendant agree not to disclose to Leung, counsel for Katrina Leung, or the employees of counsel for Katrina Leung any information which they learn as a result of defendant's potential cooperation with the government. (emphasis added)

On learning of the existence of the preceding clause, Defendant moved to dismiss the charges against her, contending that the government has prohibited Smith from talking to her attorneys, obstructing her right of access to a critical witness in her case.

It is well established that the government may not interfere with defense access to witnesses. *United States v. Black*, 767 F.2d 1334, 1337 (9th Cir.1985). The government has several responses to the allegations in this case, which may be summarized as follows:

1) The language in the plea agreement is ambiguous; it does not prohibit Smith from being interviewed by Leung's attorneys;

2) The government never intended to restrict Smith's freedom to consent to an interview by Leung's attorneys if he wished to do so;

3) If the plea agreement could be interpreted to impose such a restriction, the government cured the problem by writing to Smith's attorneys and explaining there was no such restriction.

The Court will address these contentions in turn.

### Ambiguity

The language in the agreement is not ambiguous. An ambiguous clause is one that is subject to more than one reasonable interpretation. The words "have no further sharing of information with Leung [or] counsel for Leung" have only one reasonable interpretation: Smith is being told not to talk to Leung or her attorneys.

### Intent

This is the most troublesome aspect of this entire motion. The government in the many documents filed with this Court in connection with this motion has repeatedly insisted that it never intended to communi-

cate to Smith that he could not talk to Leung's attorneys; that the language was inartfully drawn and not carefully thought out; and that at the time of the plea, the government was not particularly concerned about Smith's being interviewed by Leung's attorneys. The evidence before the Court absolutely belies these representations.

First is the testimony of John Cline, Smith's attorney, that during the plea negotiations, the government attorneys expressed concern about whether Smith would grant an interview to Leung's attorneys. Cline was given to understand they did not want him to do that.

Second is the fact that within days after the plea, Smith was reminded by Assistant United States Attorneys that he was to discuss the case only with the investigating agents or his attorneys and was to tell anyone else who inquired about the case that he was not at liberty to discuss it. The government explains that this admonition was triggered by an e-mail Smith had sent to former co-workers, inviting inquiries. That explanation is not implausible and would be more persuasive but for other evidence in this case.

Third, and most telling, is an e-mail communication from Robert Wallace, Senior Trial Counsel with the Department of Justice, Counterespionage Section, to Assistant United States Attorney Emmick.[1] Mr. Emmick had sent an e-mail to a number of attorneys involved in the Smith case, including Wallace, advising them that Leung had filed a motion to dismiss based on a provision in the Smith plea agreement that prohibits Smith from speaking to Leung's counsel. Emmick asked for information about how and why the provision was included, to assist him in responding to the motion. On November 18, Wallace sent the following e-mailed response:

> My understanding on the inclusion of this provision in the Smith plea agreement is that CES wanted this provision preventing Smith from being interviewed by Leung's counsel because we consider Smith to be a repository of classified information who has a continuing obligation of non-disclosure. The Section 5(a) filing by Smith and the 302s of Smith's debriefing set forth the classified information potentially at risk in any such interviews by counsel for Leung. Furthermore, Smith's previously demonstrated lack of concern or regard for his non-disclosure obligations raise significant concerns whether Smith would honor those continuing obligations now in an interview by counsel for Leung. We obviously would not be allowed to monitor those interviews nor even proscribe what subjects are off-limits (which, by the way, would give Leung's counsel a nice start on a Sec. 5(a) filing themselves.)

In the face of that e-mail, anything short of an admission and apology on the part of the government is difficult to imagine. Mr. Emmick did neither. Rather, he chose to ignore the e-mail. He had spoken to the two prosecutors handling the Smith case, who had been responsible for drafting the agreement. He believed their explanation that the clause was "simply intended to be an explanation of one of the consequences of the clause requiring

---

1. After receiving the government's Opposition to the Motion to Dismiss, Defendant subpoenaed a number of documents, including drafts of the Smith plea agreement, and all correspondence and e-mails concerning the plea agreement. The government moved to quash the subpoenas. The Court ordered that the subpoenaed material be turned over to the Court *in camera*. Included in that material was the Wallace e-mail, together with a declaration of Mr. Emmick.

Smith to withdraw from the joint defense agreement," and disregarded Wallace's explanation. He assumed Wallace must have been referring to some other non-disclosure provisions in the agreement. He neither called Wallace nor made any attempt to contact him about the damaging admission he had received.

Mr. Emmick's declaration further states that when he spoke to Wallace in mid-December, he learned that Wallace had not yet read the motion when he sent the e-mail. When Wallace read the motion later that same day, he realized he had been referring not to Paragraph 15(d) but to the non-disclosure provisions in the Agreement.[2] He, however, did not contact Emmick with that explanation, because he was certain Emmick would work it out on his own. Even more remarkably, Wallace explained that he referred in his e-mail to "preventing Smith from being interviewed" by Leung's counsel as a "shorthand" way of describing the defense allegations. He did not really believe that any part of the agreement would prohibit such an interview.

In a stunning example of understatement, Mr. Emmick states in his declaration that "The e-mail might be construed as being inconsistent with one of the positions taken by the Government in its filings."

The e-mail is, of course, entirely inconsistent with the government's position. What is of great concern to the Court is that Mr. Emmick was in possession of the information in the e-mail some six days before filing his Opposition to the Motion to Dismiss which not only makes no reference to it, but states categorically that the government never intended to prohibit

Smith from being interviewed by Leung's counsel. The Court is reminded of the very apt observation of Judge Kozinski writing for the Ninth Circuit Court of Appeals in *U.S. v. Kojayan*, 8 F.3d 1315, 1318 (9th Cir.1993):

> Anyone can make a mistake. Words uttered spontaneously sometimes come out wrong; the exigencies of trial may make it hard to consider all the implications of a particular assertion. The mere fact of a misstatement to the jury therefore isn't the end of the matter. In determining the proper remedy, we must consider the government's wilfulness in committing the misconduct and its willingness to own up to it.

The evidence makes it abundantly clear to the Court that the government, in negotiating and drafting a plea agreement for Smith, wanted to secure his promise that he would not talk to Leung or her attorneys. The clause was intentionally placed in the agreement to accomplish that purpose. When confronted with Ms. Leung's motion to dismiss, the government proffered an assortment of explanations and denials. Such conduct compounds the problem by undermining the Court's confidence in the integrity of the process.

## Letter of Explanation

On the same day the government filed its Opposition to the instant motion, it sent a letter to Smith's counsel, explaining that the plea agreement provision was never intended to prohibit Smith from being interviewed by Leung's counsel. The government argues that any misunderstanding about the clause has now been cleared up, and any harm has been cured. The

---

**2.** Paragraphs 18 through 21 of the agreement are entitled "Nondisclosure Agreements." They affirm the continuing vitality of the FBI Nondisclosure Agreements Smith had earlier signed when he was an agent. Smith promises not to reveal classified information without authorization.

Court will assess the effect of this letter in its discussion of prejudice.

### Misconduct

The government has engaged in wilful and deliberate misconduct, depriving defendant of her right of access to a critical witness in her defense.

The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States. This Court had occasion in *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), to describe what it regarded as the most basic ingredients of due process of law....

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*Washington v. Texas*, 388 U.S. 14, 18, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

In *United States v. Little*, 753 F.2d 1420 (9th Cir.1984), the Court cited a line of cases "which support the proposition that substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process." *Id.* at 1438; *see also United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir.1998) ("It is well established that 'substantial government interference with a defense witness' free and unhampered choice to testify amounts to a violation of due process.").

The government's misconduct is, therefore, of constitutional dimensions. Deliberate misconduct which rises to the level of a due process violation warrants dismissal of criminal charges if it results in substantial prejudice to the defendant. *United States v. Lopez*, 4 F.3d 1455, 1463–64 (9th Cir.1993); *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir.1993).

### Prejudice

■ The Court's research has disclosed no cases with facts similar to these. Numerous cases stand for the proposition that a prosecutor may not interfere with a defendant's access to witnesses, but they are significantly distinguishable. In cases where a government witness has been admonished not to speak to anyone representing the defendant, or not to consent to an interview without the prosecutor being present, the harm to the defendant was easily cured. An explanation by the judge, or the prosecutor, that the witness is, in fact, free to be interviewed if he wishes, is sufficient to undo the damage.

Here, Smith was facing trial on five serious felony charges alleging deprivation of honest services, wire fraud, and removal of national defense information. Conviction could have resulted in a sentence of many years in federal prison. He was also, according to his e-mail to his former coworkers, facing the loss of his federal pension. Pursuant to the terms of his plea agreement, he anticipates that he will be placed on probation, stand convicted of a relatively minor offense, and will not lose his pension. Smith, of course, has not yet been sentenced, and if routine practices are followed, he will not be sentenced until after Ms. Leung's trial. Suspended over his head, like the proverbial Sword of Damocles, is the sure knowledge that if he violates any of the terms of his plea agree-

ment, the deal is canceled, and his future returns to its former bleak state.

In considering the impact of the government's letter to Smith's counsel, the Court cannot turn a blind eye to the realities of this case. Mr. Smith knows what is expected of him, and the possibility that he would now feel free to be interviewed on behalf of Ms. Leung is ephemeral at best. Of course, we do not know if he would have consented to such an interview in the absence of the "no-information-sharing" clause. The government argues that this establishes there is no substantial prejudice to the defense.

But, as the defense points out, this is Ms. Leung's main witness. He worked with her for eighteen years, knows details of the kind of work she did, whether her work was of assistance to the United States, whether she was trustworthy and loyal to this country—all issues that go to the heart of the defense of Ms. Leung. And according to Smith's e-mail, he believed he had ample reason to trust and believe in Ms. Leung during the years they worked together. Additionally, Smith and Leung had an intimate relationship for many years. All of the foregoing supports the likelihood that Smith would have been willing to talk to Ms. Leung's attorneys but for the prohibition.

This case is, therefore, significantly different from the reported decisions in this area: the witness is critical to the defense; the witness has everything to lose by defying the government's wishes with respect to Ms. Leung's case; the admonition against talking to the defense was not just an instruction from the prosecutor, but was made a condition of what the defense has accurately described as his "sweetheart deal."

The Court finds the defendant has suffered substantial prejudice as a result of the prosecutor's due process violation.

## Dismissal

" 'The district court may dismiss an information based on outrageous government conduct if the conduct amounts to a due process violation.' " *United States v. Doe*, 125 F.3d 1249, 1253 (9th Cir.1997) (quoting *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir.1991)). Even if the conduct does not amount to a due process violation, a court may nonetheless dismiss charges "under its supervisory powers. The court may exercise its supervisory powers 'to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations...; or to deter future illegal conduct.' " *Id.* at 1253 (citations omitted).

Certainly the sanction of dismissal is an extreme remedy, which should not be imposed if any lesser sanction will serve. *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir.1993). In this case, no other sanction could remedy the harm done. An instruction to Smith from the Court that he was free to talk to Leung's counsel would, under the circumstances of this case, be no more effective than the prosecutor's letter. It does not appear to the Court that any other sanction would remedy the due process violation suffered by defendant.

The Court also believes that this is an appropriate case to dismiss under the Court's inherent supervisory powers. "[E]xercise of supervisory powers is an appropriate means of policing ethical misconduct by prosecutors. We also have expressly recognized the authority of the district court to dismiss actions where government attorneys have 'wilfully deceived the court,' thereby interfering with 'the orderly administration of justice.' " *Lopez*, 4 F.3d at 1463 (citations omitted) (quoting

**998**

*United States v. Nat'l Medical Enters., Inc.,* 792 F.2d 906, 912 (9th Cir.1986)).

As detailed above, the government has misrepresented to the Court its purpose and intent in creating the "no-further-sharing" clause in the plea agreement. While a certain amount of shading of the truth may be tolerated, even in judicial proceedings, prosecutors are subject to constraints and responsibilities beyond those which apply to other lawyers. *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), *overruled on other grounds by Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). A prosecutor's first obligation is to serve truth and justice, and assure that those accused are given a fair trial. *United States v. Hill,* 953 F.2d 452, 458 (9th Cir.1991); *Donnelly v. DeChristoforo,* 416 U.S. 637, 648–49, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (Douglas, J., dissenting). In this case, the government decided to make sure that Leung and her lawyers would not have access to Smith. When confronted with what they had done, they engaged in a pattern of stone-walling entirely unbecoming to a prosecuting agency.

### Conclusion

Defendant's Motion to Dismiss is granted. All charges in the indictment filed May 8, 2003 are hereby dismissed.